**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

LEILA FLORES-DUENAS,

       Plaintiff,

vs.                                                                                     No. CIV 13-0660 JB/CG

THOMAS R. BRIONES, BRIONES BUSINESS
LAW CONSULTING, P.C., and
USAA CASUALTY INSURANCE COMPANY,

       Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on: (i) the Plaintiff's Motion to Remand and for Attorney's Fees Award, filed August 9, 2013 (Doc. 10)("Flores-Duenas' Motion"); and (ii) Defendants Tom Briones and Briones Business Law Consulting, P.C.'s Motion for Remand, filed August 15, 2013 (Doc. 12)(" Briones Defendants' Motion"). The Court held a hearing on October 30, 2013. The primary issue is whether the Plaintiff Leila Flores-Duenas procedurally misjoined the nondiverse Defendants Thomas R. Briones ("Briones") and Briones Business Law Consulting, P.C. ("Briones Law")(collectively, "the Briones Defendants") to defeat federal diversity jurisdiction. The Court adopts the procedural misjoinder doctrine, at least as it would apply to cases where the nondiverse defendant is also a citizen of the State in which the plaintiffs first brought the action. The Court also concludes, however, that the claims in this case are not procedurally misjoined. The Court will, therefore, remand this case for lack of subject-matter jurisdiction. The Court will, however, deny Flores-Duenas' request for attorney's fees.

## FACTUAL BACKGROUND

The Court takes its facts from the Plaintiff's Complaint for Legal Malpractice, Respondeat Superior, Declaratory Judgment, Breach of Contract, Bad Faith, Violations of New Mexico Insurance Code, and Violations of New Mexico Unfair Practices Act, filed in state court on June 6, 2013, filed in federal court on July 16, 2013 (Doc. 1-1)("Complaint").   This case is a dispute between Plaintiff Leila Flores-Duenas -- a New Mexico resident -- and three Defendants: Briones, a New Mexico resident; Briones Law, a professional corporation incorporated under New Mexico law and with its principal place of business there; and USAA Casualty Insurance Company ("USAA Casualty"), a non-resident of New Mexico, but which is authorized to conduct business there.  See Complaint ¶¶ 1-4, at 1-2.  The dispute arises from a car accident in Albuquerque, New Mexico in which non-party Liam Hoch rear-ended Flores-Duenas' vehicle; the accident seriously injured Flores-Duenas.  See Complaint ¶¶ 8-15, at 2-3.  Hoch's mother, Lyn M. Magill-Hoch, owned the car Hoch drove, and USAA insured it.  See Complaint ¶ 9, at 2.  USAA also insured Flores-Duenas; her insurance included uninsured or underinsured motorist ("UI/UIM") coverage.  See Complaint ¶ 23, at 4.  Flores-Duenas hired Briones and Briones Law to represent her in a personal injury case against Hoch.  See Complaint ¶ 16, at 3.

Before Briones acted on Flores-Duenas' case, the statute of limitations expired.  See Complaint ¶¶ 17-18, at 3.  A dispute then arose between Flores-Duenas and Briones: "Briones began trying to convince Flores-Duenas, still his client at that point, to settle any claim she had against him and Briones Law."  Complaint ¶ 18, at 3.  Briones offered to settle any such claims in exchange for legal work he would perform of up to $50,000.00.  See Complaint ¶ 20, at 3.  "Although he had previously valued Flores-Duenas's lawsuit at well over $600,000.00, Briones told Flores-Duenas

- 2-

that her 'personal take-home recovery from this lawsuit would have been in the $15,000 - $20,000 range at best.'" Complaint ¶ 21, at 4. Briones admitted his malpractice and tried to convince Flores-Duenas to settle her claims, but he never told her about the conflicts of interest that arose in giving that advice, "and he never advised Flores-Duenas to seek separate legal counsel concerning settling with him and his firm." Complaint ¶ 22, at 4. Flores-Duenas declined Briones' settlement offers. See Complaint at ¶ 23, at 4. Further, she hired separate counsel to represent her in her misrepresentations against Briones. See Complaint ¶ 24, at 4.

Flores-Duenas also began to pursue a UM/UIM claim against USAA Casualty. See Complaint ¶ 24, at 4. Her USAA policy provided $50,000/$100,000 UM/UIM coverage for her vehicles. See Complaint ¶¶ 29-29, at 4. Under the policy, Hoch was an uninsured motorist, "because there is no coverage available under his policy of automobile liability insurance at this time." Complaint ¶ 30, at 5. USAA Casualty twice denied Flores-Duenas' demand for UM/UIM coverage, and twice ignored Flores-Duenas' attorneys' request that USAA give her either a copy of the declarations page from the USAA policy that insured Hoch or a certified certificate of coverage, "so that Flores-Duenas could evaluate the amount of insurance that was available to her under her liability policy." Complaint ¶¶ 33-41, at 5-6. USAA's only explanation for its coverage denial is that "[i]t appears that the [bodily injury] coverage is greater than the UIM coverage; therefore, there would not be a UIM claim." Complaint ¶ 36, at 5.

## PROCEDURAL BACKGROUND

Flores-Duenas alleges seven causes of action against the Defendants. Against Briones, she alleges legal malpractice, see Complaint ¶¶ 42-48, at 6-7, and that Briones Law is liable for Briones' malpractice under a reapondeat superior theory, see Complaint ¶¶ 49-56, at 7-8. Against USAA

Casualty, she seeks a declaratory judgment, damages, attorney's fees, and costs on various theories related to the coverage denial: breach of contract, insurance bad faith, violations of the New Mexico Insurance Code, N.M. Stat. Ann. §§ 59a-1-1 to -60-7, and violations of the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1 to -12-26. See Complaint ¶¶ 57-87, at 8-12.

USAA Casualty removed the case to federal court, asserting that the Court has diversity jurisdiction. See Notice of Removal at 1, filed July 16, 2013 (Doc. 1). In USAA Casualty's view, Flores-Duenas' "claims against USAA . . . and the Briones Defendants are entirely distinct claims under both Fed. R. Civ. P. 20 and NMRA 1-020, have not been properly brought in the same lawsuit and constitute procedural misjoinder." Notice of Removal ¶ 6, at 3. 4. While USAA Casualty concedes that the United States Court of Appeals for the Tenth Circuit has not adopted the procedural misjoinder doctrine, it argues that the Court should adopt and apply the doctrine in this case, because Flores-Duenas' has brought her legal-malpractice claims against the Briones Defendants together with her coverage claims against USAA Casualty only to defeat federal diversity jurisdiction. See Notice of Removal ¶ 8, at 3-4. In USAA Casualty's view, the Court should sever Flores-Duenas' claims against the Briones Defendants and retain jurisdiction over the case against USAA Casualty. See Notice of Removal ¶ 6, at 3 n.1. The Notice of Removal does not, however, address whether the Briones Defendants consented to removal.

Flores-Duenas disagrees; in her view, her claims all

arise, in one way or another, from the subject automobile accident. Plaintiff's claims against the Briones Defendants arise from their handling of Plaintiff's personal injury claim. Plaintiff's claims against Defendant USAA arise from its bad faith denial of UM benefits for Plaintiff's injuries from the subject accident. For these reasons, as well as those set forth in greater detail below, Plaintiff's claims against Defendant USAA and the Briones Defendants are properly joined because they arise "out of the same transaction, occurrence or series of transactions or occurrences" and involve numerous questions of law and fact in common.

Flores-Duenas' Motion at 3-4.  Flores-Duenas stresses that, while the United States Court of Appeals for the Eleventh Circuit has adopted procedural misjoinder, the Tenth Circuit has not adopted it.  Flores-Duenas' Motion at 5-4.  In her view, the doctrine impermissibly expands federal subject-matter jurisdiction, and she cites cases that have rejected the doctrine for that reason.  See Flores Duenas' Motion at 6.

Even if the Court adopts the procedural misjoinder doctrine, Flores-Duenas argues, she properly joined her claims against USAA Casualty and the Briones in this suit.  See Flores-Duenas' Motion at 6-7.  Flores-Duenas cites rule 1-020 of the New Mexico Rules of Civil Procedure, and contends that all of her claims against the Defendants arise from the same transaction, occurrence, or series of transactions or occurrences: the car accident.  See Flores-Duenas' Motion at 7.  Further, she argues that "numerous, significant questions of law and fact [are] common to all of Plaintiff's claims against Defendant USAA and the Briones Defendants" -- for example, whether Hoch is an "uninsured motorist" under Flores-Duenas' USAA policy, and "whether the Briones Defendants would be entitled to offset any UM coverage from Plaintiff's legal malpractice damages."  Flores-Duenas' Motion at 8.  Flores-Duenas argues that trying those issues separately would be inefficient and risks inconsistent resolutions.  See Flores-Duenas' Motion at 8.  Further, Flores-Duenas points out that the Briones Defendants raise failure-to-mitigate as an affirmative defense, and argues that "[o]ne formulation of this defense is that Plaintiff failed to seek UM benefits once the statute of limitations was blown and she no longer could recover from Liam Hoch's automobile liability insurance company."  Flores-Duenas' Motion at 8.  Finally, Flores-Duenas argues that common facts and issues will inform the damages calculation.  See Flores-Duenas' Motion at 8-9.  In sum, in Flores-Duenas' view, her "joinder of her claims against Defendant USAA and the Briones

Defendants in one action not only satisfies the joinder requirements of Rule 1-020 NMRA, but it also gives effect to these well-established policies of judicial efficiency and fairness."  Flores-Duenas' Motion at 9.

Flores-Duenas also argues that USAA Casualty's removal is defective, because USAA Casualty failed to obtain the Briones Defendants' consent before removing.  <u>See</u> Flores-Duenas' Motion at 9-10.  Flores-Duenas also argues that the Court should award her attorney's fees, because the lack of diversity jurisdiction was clear from the Complaint, and the Tenth Circuit has not adopted the procedural misjoinder doctrine.  <u>See</u> Flores-Duenas' Motion at 10-11.  Flores-Duenas contends that she has incurred substantial attorney's fees as a result of the removal.  <u>See</u> Flores-Duenas' Motion at 10.  In sum, Flores-Duenas contends that "USAA, accused of bad faith denial of available insurance benefits, has chosen to engage in further bad faith by improperly removing this action, delaying resolution of this matter, and forcing its insured to incur unnecessary attorney's fees." Flores-Duenas' Motion at 11.

The Briones Defendants substantially agree with Flores-Duenas.  In the Briones Defendants' Motion, the Briones Defendants lay out three alleged "fatal defects" in the removal: (i) lack of diversity; (ii) a defendant is a New Mexico citizen; and (iii) not all Defendants joined in the Notice of Removal.  Briones Defendants' Motion ¶ 3, at 2.  With respect to the lack of diversity, the Briones Defendants agree with Flores-Duenas that the Court should not adopt the procedural misjoinder doctrine, "particularly in light of its uncertain status and its reversal of the traditional presumption against removability."  Briones Defendants' Motion ¶ 5, at 2-3.  Further, in their view, that doctrine requires that the parties be "<u>egregiously misjoined</u>," and that any misjoinder in this case was not egregious.  Briones Defendants' Motion ¶ 6, at 3 (emphasis in original)(citing <u>Tapscott v. MS Dealer</u>

Serv. Corp, 77 F.3d 1353, 1360 (11th Cir. 1996), abrogated on other grounds by Cohen v. Office

Depot, Inc., 204 F.3d 1069 (11th Cir. 2000)).

With respect to the joinder in this case, the Briones Defendants argue that courts construe

both rule 20 of the Federal Rules of Civil Procedure and rule 1-020 of the New Mexico Rules of

Civil Procedure liberally, and will find proper joinder if there is a "logical relationship" between the

claims -- that is, "if there is substantial evidentiary overlap in the facts giving rise to the cause of

action against each defendant."  Briones Defendants' Motion ¶¶ 7-9, at 3 (quoting In re EMC Corp.,

677 F.3d 1351, 1358 (Fed. Cir. 2012)).  This case satisfies the logical relationship test, according to

the Briones Defendants, because "several [claims] involve proof of the same elements, based on the

same facts."  Briones Defendants' Motion ¶ 10, at 3-4.  In particular, in the Briones Defendants'

view, both sets of claims "turn in large part on whether, and to what extent, Plaintiff would have

been able to recover damages resulting from injuries sustained in her car accident."  Briones

Defendants' Motion ¶ 10, at 3-4.  Because the success of Flores-Duenas' legal-malpractice action

hinges on whether she can prove that she would have won her insurance claims at trial, the Briones

Defendants argue, the logical-connection test is satisfied.  See Briones Defendants' Motion ¶¶ 11-12,

at 4.  The Briones Defendants also repeat Flores-Duenas' argument that certain damages issues,

particularly the question whether Hoch's liability insurance will offset Flores-Duenas' damages, are

common to both cases, which also counsels against severance.  See Briones Defendants' Motion

¶¶ 13-14, at 4-5.  In sum, in their view, because "there has been no misjoinder -- and certainly no

egregious misjoinder -- the Court need not decide whether to recognize the doctrine of fraudulent

misjoinder."  Briones Defendants' Motion ¶ 15, at 5 (emphasis in original).  According to the

Briones Defendants, the Court should, therefore, remand the case.  Briones Defendants' Motion ¶

16, at 5.

USAA Casualty responded separately to each motion.  In Defendant USAA Casualty Insurance Company's Response to Plaintiff's Motion to Remand, filed August 26, 2013 (Doc. 20)("USAA Casualty's Response to Flores-Duenas' Motion"), USAA Casualty contests the other parties' characterization of the Tenth Circuit's view of procedural misjoinder.  USAA Casualty quotes this language from Lafalier v. State Farm Fire & Casualty Co., 391 F. App'x 732 (10th Cir. 2010)(unpublished)[1]: "There may be many good reasons to adopt procedural misjoinder . . . ." 391 F. App'x at 739.  Therefore, in USAA Casualty's view, the "Plaintiff's contention that the Tenth Circuit has affirmatively rejected the doctrine is demonstrably false.  The question remains wide open." USAA Casualty's Response to Flores-Duenas' Motion at 3.  USAA describes the doctrine as follows:

> Fraudulent misjoinder (sometimes referred to as "procedural misjoinder") occurs when a plaintiff combines unrelated claims against different defendants in a single

---

[1] Lafalier v. State Farm Fire & Casualty Co. is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored.  However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court finds that Lafalier v. State Farm Fire & Casualty Co., Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp., 149 F. App'x 775 (10th Cir. 2005), Nerad v. AstraZeneca Pharmaceuticals., Inc., 203 F. App'x 911 (10th Cir. 2006)(unpublished opinion), Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592 (10th Cir. 2000)(unpublished table opinion), and Brazell v. Waite, No. 12-4047, 2013 WL 2398893 (10th Cir. 2013)(unpublished opinion), have persuasive value with respect to material issues and will assist the Court in its disposition of this Memorandum Opinion and Order.

action without a reasonable procedural basis for doing so.  Where the misjoinder would defeat federal jurisdiction, the improperly joined claims should be severed so that the defendant is not deprived of its statutory right of removal.

USAA Casualty's Response to Flores-Duenas' Motion at 4 (citations omitted).  In USAA Casualty's view, the procedural misjoinder doctrine is a logical extension of fraudulent joinder,[2] in that "[b]oth doctrines serve the same purpose: to prevent plaintiffs from improperly restricting a defendant's access to a federal forum."  USAA Casualty's Response to Flores-Duenas' Motion at 5.  In its view, applying the doctrine in this case would serve this purpose, because Flores-Duenas "has blatantly misjoined different causes of action against different defendants in order to defeat diversity."  USAA Casualty's Response to Flores-Duenas' Motion at 4.

USAA Casualty begins its argument that Flores-Duenas procedurally misjoined the Briones Defendants by noting that, under rule 20(a) of the Federal Rules of Civil Procedure, defendants may be joined only if two conditions are met: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a).  See USAA Casualty's Response to Flores-Duenas' Motion at 5.  USAA notes that Flores-Duenas suggested that the Court

> should look to the New Mexico joinder rules, rather than Federal Rule of Civil Procedure 20, in determining whether parties or claims have been fraudulently misjoined.  (Mot. at 4.)  USAA submits that whether a party has manipulated its pleadings in order to avoid federal jurisdiction should be a matter of federal -- not state -- law.  But even if the Court determines that fraudulent misjoinder is a question of state law, the result here is the same, as Rule 1-020 NMRA virtually duplicates the language of the federal rule.

---

[2] Generally, fraudulent joinder occurs when "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined.  Zufelt v. Isuzu Motors America, L.C.C., 727 F. Supp. 2d 1117, 1124-25 (D.N.M. 2009)(Browning, J.).

USAA Casualty's Response to Flores-Duenas' Motion at 6 n.2.

In USAA's view, neither of rule 20's conditions is satisfied.  As to the first prong, the Complaint does not allege that "USAA is jointly or severally liable for or in any way involved in, [sic] the Briones Defendants' Malpractice."  USAA Casualty's Response to Flores-Duenas' Motion at 6.  Further, it contends, the relief Flores-Duenas seeks from USAA Casualty "does not implicate the Briones Defendants."  USAA Casualty's Response to Flores-Duenas' Motion at 6.  USAA Casualty contends that Flores-Duenas' argument that these events arise out of the car accident is "superficial."  USAA Casualty's Response to Flores-Duenas' Motion at 6.  According to USAA Casualty, "[t]he facts surrounding the car accident itself are irrelevant to" both "the determination of the coverage claims" against USAA Casualty -- because those claims arise out of USAA Casualty's "adjustment and coverage decisions under an insurance policy" it issued to Flores-Duenas -- and "the issue of whether the Briones Defendants committed malpractice by failing to file a claim against the other driver involved in the accident within the three-year statute of limitations."  USAA Casualty's Response to Flores-Duenas' Motion at 6-7.

With respect to the common-questions prong, USAA Casualty argues that Flores-Duenas' claims raise entirely different questions:

> The claims against USAA CIC raise questions of whether it complied with Plaintiff's insurance policy in adjusting Plaintiff's claims for uninsured motorist coverage and whether it acted in bad faith in its handling of those claims.  The claims against the Briones Defendants raise entirely different questions about legal malpractice: duty, breach of duty, and the like.  Although both sets of claims have a "but for" connection to the car accident in which Plaintiff was involved, Plaintiff's assertion that this fact makes joinder proper is misguided, because the car accident itself does not give rise to any question of law or fact that is relevant to both sets of claims.

USAA Casualty's Response to Flores-Duenas' Motion at 7.  USAA Casualty compares this case to Willingham v. State Farm Ins. Co., No. 2:09-CV-59-SA-SAA, 2009 WL 2767679 (N.D. Miss. Aug.

- 10-

27, 2009).  In that case, a fire had destroyed a home, and the homeowners sued two defendants in the same action: (i) an insurance company, against whom the homeowners asserted various coverage claims; and (ii) a builder which the homeowners had hired to build a new house, against whom the homeowners asserted a breach-of-contract claim.  See 2009 WL 2767679 at *1-2.  The court found that the homeowners had fraudulently misjoined the defendants, because the claims "involve two separate contracts and implicate distinctly different factual and legal issues."  2009 WL 2767679 at *4.  USAA Casualty argues that the court's reasoning applies with equal force here:

> The bad faith claim asserted against State Farm involves the interpretation and application of an insurance policy, questions as to adjusters' actions, and the application of an extensive body of Mississippi law addressing the issues of bad faith and imposition of punitive and/or extra-contractual damages for the denial of an insurance claim.  However, the breach of contract claim against Southern Homes involves the interpretation and application of a construction contract and factual questions as to the quality of construction.

2009 WL 2767679, at *4.  USAA Casualty argues that Flores-Duenas' argument that both claims depend on whether Hoch is an "uninsured motorist" under Flores-Duenas' policy is wrong, because the jury can decide whether the Briones Defendants are liable for malpractice without determining the coverage issue; "[i]n other words, whether USAA CIC properly or improperly denied uninsured motorist coverage to Plaintiff has no bearing on whether the Briones Defendants blew the statute of limitations."  USAA Casualty's Response to Flores-Duenas' Motion at 8.

In USAA Casualty's view, Flores-Duenas' argument that the damages available to her from the Briones Defendants depends on her coverage under the USAA Casualty policy "is, frankly, preposterous."  USAA Casualty's Response to Flores-Duenas' Motion at 10.

> The determination of "the total amount of insurance proceeds that the Briones Defendants could have recovered from Liam Hoch" (Mot. at 8) is limited to an assessment of whether the Briones Defendants could have recovered from Plaintiff's policy.  If the Briones Defendants had not failed to file suit within the statute of

limitations, the only possible involvement of Plaintiff's USAA CIC policy would
have been a determination of whether Liam Hoch's underinsured motorist benefit
was lower than Plaintiff's, in which case a demand could have been made on her own
USAA CIC policy.  That determination can be made by comparing the two policies -
- it is not a question of fact for the jury to decide.  It certainly has nothing to do with
the question of whether, after Plaintiff's claims against Liam Hoch's policy were
foreclosed by the Briones Defendants' negligence, USAA CIC acted properly in
denying Plaintiff's claim for uninsured motorist benefits under her own policy.

USAA Casualty's Response to Flores-Duenas' Motion at 10.  Further, USAA Casualty contends that

Flores-Duenas' failure-to-mitigate and offset arguments are speculative, in that no party raised such

an argument in their pleadings.  See USAA Casualty's Response to Flores-Duenas' Motion at 10.

Returning to the procedural-misjoinder standard, USAA Casualty argues that "baseless

misjoinder of wholly unrelated claims against unrelated defendants in order to deprive it of its right

to a federal forum easily meets Tapscott's" requirement that the misjoinder be "egregious."  USAA

Casualty's Response to Flores-Duenas' Motion at 10-11.  USAA Casualty argues, however, that the

"egregiousness" overlay atop the procedural-misjoinder standard "adds an unnecessary level of

complexity to removal jurisdiction and unduly limits a defendant's rights of removal."  USAA

Casualty's Response to Flores-Duenas' Motion at 10.

In sum, whether fraudulent joinder is governed by federal or state law, and whether
or not the misjoinder must be "egregious" in order for the doctrine to apply, this
Court should find that Plaintiff's claims against USAA CIC and the Briones
Defendants were fraudulently misjoined, that the claims against the Briones
Defendants should be severed and returned to state court, and that Plaintiff's claims
against USAA CIC should be retained in this Court.

USAA Casualty's Response to Flores-Duenas' Motion at 11.

In response to Flores-Duenas' argument that removal is procedurally defective, because the

Briones Defendants did not agree to remove, USAA Casualty argues that an improperly joined

defendant's consent is unnecessary.  See USAA Casualty's Response to Flores-Duenas' Motion at

- 12-

12 (citing <u>Jernigan v. Ashland Oil, Inc.</u>, 989 F.2d 812 (5th Cir. 1993)).  In its view, Flores-Duenas did not properly join the Briones Defendants, and their consent is, therefore, unnecessary.  <u>See</u> USAA Casualty's Response to Flores-Duenas' Motion at 12.

Finally, USAA Casualty contends that, even if the Court remands the case, it should not award Flores-Duenas attorney's fees, principally because "when [USAA Casualty] removed this action it had a legitimate basis to believe that the federal court had jurisdiction over the case under the doctrine of fraudulent misjoinder."  USAA Casualty's Response to Flores-Duenas' Motion at 13. In its view, while the Eleventh Circuit is the sole federal court of appeals to have expressly adopted the doctrine, the United States Courts of Appeals for the Fifth and Ninth Circuits have, like the Tenth Circuit, acknowledged the doctrine's existence, and have neither rejected nor expressly adopted it.  <u>See</u> USAA Casualty's Response to Flores-Duenas' Motion at 13-14.  Therefore, USAA Casualty contends, it had legitimate reasons to remove this case, and the Court should not award attorney's fees if it remands the case.  <u>See</u> USAA Casualty's Response to Flores-Duenas' Motion at 14.

In Defendant USAA Casualty Insurance Company's Response to Defendants Tom Briones' and Briones Business Law Consulting, P.C.'s Motion to Remand, filed September 3, 2013 (Doc. 21)("USAA Casualty's Response to Briones Defendants' Motion"), USAA Casualty argues that "[t]he Briones Defendants did not make -- nor does the motion indicate that they made -- a good faith request for concurrence in the motion," and that the Court should summarily deny their motion under D.N.M. LR-Civ 7.1(a).  USAA Casualty's Response to Briones Defendants' Motion  at 1. Further, USAA Casualty says it would have agreed to a remand as to Flores-Duenas' claims against the Briones Defendants -- "indeed, USAA . . . has itself requested that the claim against the Briones

Defendants be severed and remanded."  USAA Casualty's Response to Briones Defendants' Motion at 1-2.  Having made those observations, USAA Casualty incorporates by reference the arguments it made in its response to Flores-Duenas' motion and presents no further substantive argument.  See USAA Casualty's Response to Briones Defendants' Motion at 2.

Flores-Duenas replies that USAA Casualty's arguments rely substantially on "hyperbole," and "incomplete, conclusory, [and] argumentative statements."  Reply in Support of Plaintiff's Motion to Remand and for Attorney's Fees Award at 1, filed September 12, 2013 (Doc. 24)("Flores Duenas' Reply").  In her view, "[a]lthough it is clear from USAA's Response that it really, really, really does not like the idea of litigating this matter in New Mexico State Court, such is not a sufficient basis to warrant its removal to federal court."  Flores Duenas' Reply at 2.  In addition to her previous arguments and the Briones Defendants' arguments for remand, Flores-Duenas underscores that, given that she needs to present evidence about the car accident in both the legal-malpractice claim against the Briones Defendants and the coverage claims against USAA Casualty, it is cheaper and more efficient to pursue the claims together.  See Flores Duenas' Reply at 3.  Flores-Duenas contends that her offset argument is not speculative, because USAA Casualty raises a mitigation defense, which "must relate, at least in part, to Plaintiff's inability to recover damages from the tortfeasor in the underlying matter."  Flores Duenas' Reply at 4.  Further, she contends that the fact that USAA Casualty brought a prematurity defense indicates that "USAA actually does understand that the claims against it are not 'wholly unrelated to the claims against the Briones Defendants,'" because "USAA's prematurity defense must relate, at least in part, to an idea that USAA should be entitled to see what happens with respect to the Briones claims and damages therein before having to pay uninsured and/or underinsured motorist benefits."  Reply at 4.

- 14-

Flores-Duenas also distinguishes <u>Willingham v. State Farm Ins. Co.</u>, arguing that transactions in that case were entirely separate:

> There, the plaintiffs sued their insurance company based on a house fire occurring at time A and the insurance company's failure to honor its obligations resulting from the fire, and also sued a contractor for work it failed to perform on a different house, occurring after the events giving rise to the claim against State Farm. <u>Willingham</u> might bear some relevance, had the plaintiffs in that case sued the tortfeasor who caused the fire together with State Farm, to seek recovery of damages resulting from the fire. That is, in essence, what Flores-Duenas is doing in this case -- she seeks recovery of damages available to her as the result of the accident caused by Liam Hoch's negligence. She has sued the parties that may currently, possibly be liable to pay such damages. While the theories against each Defendant may vary, that is not uncommon in cases against multiple defendants arising from the same series of occurrences or transactions. One defendant may have defenses available that another does not. But that does not misjoinder make.

Flores Duenas' Reply at 5. Flores-Duenas also points out that <u>Willingham v. State Farm Ins. Co.</u> found that state law controls questions of fraudulent joinder and argues that "[t]his oversight in not carefully reading <u>Willingham</u> is likely also to blame for USAA's failure to recognize how different the facts in <u>Willingham</u> are from the present case." Flores Duenas' Reply at 5 n.1. Further, she argues, USAA Casualty's argument that the details of the car accident itself are irrelevant to her coverage claims conflates the essentially factual "transaction or occurrence" test with the essentially legal issue whether Defendants must present different defenses. <u>See</u> Flores Duenas' Reply at 5-6 n.2. In her view,

> [t]hat argument is actually incorrect, as noted above, because Plaintiff will have to prove the underlying negligence claim to prove entitlement to underinsured and/or uninsured motorist benefits in any event. But setting that aside for the moment, USAA's statement can be read to say "Plaintiff will not be entitled to damages resulting from her car accident from USAA unless and until she proves entitlement to such damages under her policy of insurance and/or law and public policy." In other words, USAA points to a legal defense to having to pay Flores-Duenas for damages from that accident. Of course the New Mexico State Court is perfectly capable of deciding the outcome of that defense under New Mexico law.

- 15-

Flores Duenas' Reply at 5-6 n.2.

The Briones Defendants contend that USAA Casualty misunderstands permissive joinder, and misstates "the essential factual and legal issues in this case."  Reply to Defendant USAA Casualty Insurance Company's Response to Defendants Tom Briones' and Briones Business Law Consulting, P.C.'s Motion to Remand at 1, filed September 10, 2013 (Doc. 22)("Briones Defendants' Reply").  In their view, USAA Casualty misreads rule 20 when it argues that Flores-Duenas must assert an identical right to relief against all defendants; in its view, the rule permits her to assert different claims for relief against each defendant, so long as the claims satisfy the transaction-or-occurrence test, and the common-question test. See Briones Defendants' Reply at 2.[3]  In their view, Willingham v. State Farm Ins. Co. differs from this case, because the "claims against the Briones Defendants and USAA . . . involve common legal elements applying to the same underlying facts," as opposed to the claims against the insurer and against the contractor in Willingham v. State Farm Ins. Co., which only shared a but-for relationship with the underlying fire.  Briones Defendants' Reply at 2.  Their reasoning is as follows:  to win her legal-malpractice claim, Flores-Duenas has to prove that she would have won the underlying "negligence case against the driver of the car that struck" her.  Briones Defendants' Reply at 2.  To win her "claim against USAA for breach of contract due to nonpayment of Plaintiff's uninsured/underinsured motorist policy," she must prove the elements of negligence to show she was "'legally entitled to recover' from the driver of the uninsured or underinsured vehicle," as N.M.S.A. 1978 § 66-5-301 requires.  Briones Defendants' Reply at 3.  In the Briones Defendants' view, those facts and legal standards give rise to

---

[3] The Briones Defendants contend that joinder is permissible under both New Mexico and federal law; they rely on federal law in their reply.  See Briones Defendants' Reply at 2 & n.2.

"a direct connection of the sort that motivated the policy of Rule 20 to promote efficiency and avoid redundant litigation through joinder." Briones Defendants' Reply at 3. They cite Hanna v. Gravett, 262 F. Supp. 2d 643 (E.D. Va. 2003), and argue that that case better illustrates "[t]he connections between the claims in this case[:]"

> In Hanna, the question was whether the plaintiff had properly joined claims against the motorist that struck his vehicle with claims against the insurance company that refused to pay his underinsured motorist benefits based on the same accident. Id. at 644-45. The Court ruled that "[t]he legal obligations of both defendants are based upon a factual showing of Gravett's negligence. Finally, the extent of Hanna's damages will have a bearing on the extent of each defendant's liability." Id. at 647. The same reasoning applies to USAA and Briones Defendants, since the malpractice claim also involves proof of the underlying negligence case.

Briones Defendants' Reply at 3. In sum, the Briones Defendants contend that the Court lacks diversity jurisdiction over them and that the Court should, therefore, remand the case to state court. See Briones Defendants' Reply at 3-4.

The Court held a hearing on October 30, 2013. See Transcript of Hearing, taken October 30, 2013 ("Tr.").[4] The Court began by expressing its concern that the absence of the Briones Defendants' consent might render USAA's removal defective and that the statute may foreclose the argument that, because Flores-Duenas fraudulently misjoined the Briones Defendants, their consent is unnecessary. See Tr. at 2:24-3:3 (Court). Flores-Duenas argued that no case considered that dimension of the issue, but that the cases instead criticize the doctrine for, among other reasons, expanding federal jurisdiction beyond what Congress intended. See Tr. at 4:2-23 (Court, Lee). Flores-Duenas argued that the case-within-a-case problem meant that she would have to prove three elements common to both claims: (i) whether Hoch was an uninsured motorist; (ii) whether public

---

[4] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

policy could trump specific language in the UM/UIM policy, as New Mexico law allows; and (iii) legal defenses, including mitigation and offset defenses.  See Tr. at 4:24-8:7 (Court, Lee).  Flores-Duenas contended that, under both New Mexico and federal joinder law, the "logical connection" test governs the question, and that the case satisfies this test, because the evidence with respect to the claims substantially overlaps.  See Tr. at 8:8-9:5 (Court, Lee).

The Briones Defendants substantially reiterated their central point that Flores-Duenas must prove the facts about the car accident both in her legal-malpractice action against them and in her coverage claims against USAA.  See Tr. at 10:5-11:3 (Allison).  The Briones Defendants conceded that the claims involve distinct transactions, but argued that the facts of the car accident underlie both claims, and stated that the distinctions in facts and defenses are not sufficient to sever the claims.  See Tr. at 11:4-12:19 (Court, Allison).  They invoke the facts of Tapscott v. MS Dealer Service Corp. -- where, as they put it, "a group of plaintiffs suing a group of defendants joined with another group of plaintiffs suing another group of defendants" -- and suggest that the facts of this case are materially different.  Tr. at 12:19-13:4 (Allison).  The Briones Defendants contended that the removal statute's language gave rise to the fraudulent joinder doctrine and that the Court can look beyond the pleadings without usurping the state courts' jurisdiction, because the inquiry "is in fact a determination of . . . whether the[] Court has jurisdiction."  Tr. at 13:3-16 (Allison).  They further suggested that the Court need not decide to adopt the doctrine, but that it could instead assume that the doctrine applies and rule that the claims are not fraudulently misjoined; after the Court expressed interest in deciding the issue, the Briones Defendants suggested that the district courts would have to work the issue out over "many, many years."  Tr. at 14:3-14 (Allison).  The Briones Defendants also conceded that the doctrine creates problems for the jurisdictional

- 18-

relationship between federal and state courts, but acknowledged that, on these facts, the Court could decide the issue.  <u>See</u> Tr. at 14:15-23 (Allison).

The Court asked why it should, as the parties had suggested, look to New Mexico joinder law rather than federal law; for example, the Court pointed out that it must apply federal pleading standards under <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), even when evaluating complaints drafted under state court rules.  <u>See</u> Tr. at 14:24-15:25 (Court, Allison).  <u>See</u>, <u>e.g.</u>, 5 Fed. Prac. & Proc. Civ. § 1204 (3d. ed.)  The Briones Defendants suggested that it does not matter what law the Court uses on these facts and that they believed the prudent approach would be to use state rules, given that the case began in state court, and that a state court will try it if the Court remands it.  <u>See</u> Tr. at 16:1-17:3 (Allison).  The Briones Defendants concluded that this case demonstrates no egregiousness, no bad faith, and no purposeful attempt to subvert the Court's jurisdiction, as the fraudulent-misjoinder doctrine requires.  <u>See</u> Tr. at 17:6-14 (Allison).

USAA Casualty argued that rule 20 governs this case, not New Mexico joinder law, but said that it would make little difference as a practical matter, given the similarity between the rules.  <u>See</u> Tr. at 18:9-16 (Apodaca).  USAA Casualty contended that the removal statute's consent requirement does not prevent removal in this case, because 28 U.S.C. § 1441(b)(2) speaks to parties "properly joined," and the Briones Defendants are not properly joined; in its view, it would be nonsensical to require consent of a fraudulently joined defendant.  Tr. at 17:24-18:9 (Apodaca).  The Court would later ask whether any cases rely on the language in 28 U.S.C. § 1446(b)(2)(A), which provides that "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action"; USAA Casualty did

not know whether the cases rely upon Section 1441 or Section 1446, but pointed out that the term "properly joined" appears in both, and that Congress must have put that language in both statutes intentionally. See Tr. at 24:1-16 (Court, Apodaca). USAA Casualty pointed to the rule that if, in a state court action, the plaintiffs do not serve a defendant, the remaining defendants can remove to federal court without the unserved party's consent; citing cases from the Fifth Circuit and the United States District Court for the District of Kansas, USAA Casualty suggested that the same principle should apply to a fraudulently joined defendant. See Tr. at 18:17-19:15 (Apodaca). With respect to the procedural misjoinder doctrine, USAA Casualty argued that it is a logical extension of the fraudulent joinder doctrine. See Tr. at 20:6-16 (Apodaca). USAA Casualty understood that Flores-Duenas contended that, because the Briones Defendants failed to bring a claim against Hoch within the statute of limitations, Hoch is an uninsured motorist within the meaning of her USAA Casualty policy, and that USAA Casualty, therefore, owes her UM/UIM benefits for any damage he caused. See Tr. at 20:22-21:6 (Apodaca). USAA Casualty argued that the law does not support this theory -- indeed, that the Court should issue a declaratory judgment against that theory -- and, in any event, that it denied coverage because, as the Complaint alleges, the bodily-injury coverage would exceed the UIM coverage. See Tr. at 21:15-22:13 (Apodaca). Further, USAA Casualty stated, the Court should not force it to defend its case in a state court action involving the legal-malpractice claims, because this combination of claims would confuse the jury. See Tr. at 22:14-19 (Apodaca).

USAA Casualty also contended that it did not need to file a motion to sever in state court, then remove only after the state court decided that motion, for several reasons: (i) the defendant has a right to remove, and the alternate rule would be hostile to that right; (ii) the state court might not

hear and decide the motion to sever before the one-year removal limitation[5] would lapse; and (iii)

removing a case after a state court made such a decision would violate the voluntary-involuntary

rule,[6]  See Tr. at 24:19-25:14 (Apodaca).  USAA maintained that the proper remedy is for the Court

to retain the case against USAA Casualty, declare it does not have jurisdiction over the case against

the Briones Defendants, and remand the case against the Briones Defendants to state court.  See Tr.

at 25:15-27:22 (Court, Apodaca).  USAA Casualty argued that the joinder rules are designed to

facilitate trial convenience and that there is no connection between the allegations; in its view, the

damages issues Flores-Duenas and the Briones Defendants cite are speculative.  See Tr. at 27:23-

28:8 (Apodaca).  Further, USAA Casualty contended, state court practice is to bifurcate underlying

accident claims from accompanying bad-faith claims, which reinforces the notion that the case's

current procedural posture "does not make sense."  Tr. at 28:9-16 (Apodaca).

The Court invited USAA Casualty to explain the circumstances in which misjoinder could be

"egregious," as Tapscott v. MS Dealer Service Corp. appears to require, given the Federal Rules of

Civil Procedure's liberality with respect to joinder.  See Tr. at 28:25-29:24 (Court).  USAA Casualty

conceded that the "egregiousness" standard may be unnecessary and argued that many district courts

---

[5] The removal statutes provide that, where a diversity case is not removable when it is filed, but becomes removable later, it "may not be removed . . . more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  28 U.S.C. § 1446(c)(1).

[6] As the Tenth Circuit has explained:

The general effect of the [voluntary-involuntary] test is that a cause cannot be removed where the removability is a result of some development other than a voluntary act of plaintiff.  The cause cannot be removed as a result of evidence from the defendant or the result of a court order rendered on the merits of the case.

- 21-

have applied a different standard: whether there is a reasonable basis in law to join the claims.  See Tr. at 29:25-30:12 (Apodaca).  Upon the Court's prompting, USAA Casualty also conceded that this doctrine, in a practical sense, forces the Court to decide a rule 20 motion now -- not whether the joinder is "egregious" or "reasonable," but merely improper.  Tr. at 30:13-31:13 (Court, Apodaca).  The Court asked whether it should do so if it does not have jurisdiction over the case; USAA argued that these facts present a "chicken and egg" problem, because the Court would have jurisdiction if Flores-Duenas had not improperly joined these defendants in the same action, and that, further, this case is not any different than if the state court severed the cases and USAA removed the case to federal court.  See Tr. at 31:14-32:5 (Court, Apodaca).  In sum, in USAA Casualty's view, the Court should decide whether USAA Casualty improperly denied Flores-Duenas insurance coverage.  See Tr. at 32:6-11 (Apodaca).  USAA Casualty conceded that, if Hoch became an "uninsured motorist" within the meaning of USAA Casualty's policy upon expiration of the statute of limitations, the cases would present common issues, thus satisfying rule 20(b).  See Tr. at 32:12-33:5 (Court, Apodaca).  In USAA Casualty's view, the principal issue in this case is the transaction-or-occurrence prong; USAA Casualty underscores that but-for causation is insufficient to satisfy the transaction-or-occurrence test, but that there must be some connection between the two events, and no such connection is present in this case.  See Tr. at 33:6-20 (Apodaca).  USAA argues that "[t]here is no claim here that the Briones defendants had anything to do with the coverage claim and there is no claim that USAA had anything to do with the malpractice claim and there can't be because they're two entirely separate claims."  Tr. at 33:21-25 (Apodaca).

Flores-Duenas first pointed out that rule 20 permits joinder of claims arising from the same

DeBry v. Transamerica Corp., 601 F.2d 480, 488 (10th Cir. 1979)(citation omitted).

"series of transaction[s] or occurrences," and not only claims arising from "literally the same transaction." Tr. at 34:23-35:5 (Lee). Flores-Duenas underscored that the case-within-a-case problem is unique to the legal-malpractice setting. See Tr. at 35:6-17 (Court, Lee). The Court indicated that it believed that USAA Casualty had the better argument about the transaction-or-occurrence prong, but that Flores-Duenas had the better argument on the common-questions prong. See Tr. at 35:18-36:5 (Court, Lee). Flores-Duenas argued that the fire in Willingham v. State Farm Ins. Co. was merely the but-for cause of both the insurance claims and the breach-of-contract claim. See Tr. at 36:6-12 (Lee). Flores-Duenas argued that she brought this suit to resolve all the related claims in the same case and argued that USAA Casualty could have asked the state court to handle these issues, but that it instead asked the Court to adopt a controversial doctrine that requires the Court to rule on a de facto motion to sever before it determines the reach of its subject-matter jurisdiction. See Tr. at 36:13-37:5 (Lee). Flores-Duenas tentatively suggested that the courts have not relied upon the removal statutes' "properly joined and served" language in considering whether a nonconsenting fraudulently joined party renders removal procedurally improper, and that they have instead relied upon policy justifications. Tr. at 37:6-38:12 (Court, Lee). Flores-Duenas conceded that the "egregiousness" language in Tapscott v. MS Dealer Service Corp is not found in the statute, but repeated her arguments that: (i) the doctrine expands federal jurisdiction; (ii) that it is inherently ambiguous; (iii) that courts have criticized it as lacking support in the Supreme Court of the United States' precedent; (iv) that it is contrary to the narrow constructions given to removal statutes; (v) that it is needlessly complex; and (vi) that it undermines federalism. Tr. at 38:13-39:17 (Court, Lee).

The Briones Defendants made two final points. First, the Briones Defendants contended that

some of the discomfort related to the doctrine comes from a key difference between fraudulent joinder and procedural misjoinder: in the latter, unlike the former, there is still a valid claim against the defendant, but the two cannot proceed in the same case in the same forum.  See Tr. at 39:25-21 (Allison).  One of that fact's consequences, in the Briones Defendants' view, is that the Court must assume it has jurisdiction to decide whether it has jurisdiction; they suggested that the discomfort with this posture may have led the Eleventh Circuit to adopt the "egregiousness" element of their standard.  Tr. at 40:21-41:9 (Allison).  The Briones Defendants maintained that, functionally, USAA Casualty has presented the Court with a motion to sever and that they were not sure whether the Court should sever the cases or, instead, remand the entire case.  See Tr. at 41:9-17 (Allison).  Second, the Briones Defendants argued that Flores-Duenas has properly brought these claims together, relying again on Hanna v. Gravett.  See Tr. at 41:21-42:23 (Allison).  The Briones Defendants contended that the coverage issue which USAA Casualty argued bars the Court from hearing the case does not destroy joinder, but is instead more appropriate for the Court's consideration at the summary judgment stage.  See Tr. at 42:24-43:13 (Allison).  The Briones Defendants concluded by acknowledging they were not certain about the proper remedy for procedural misjoinder -- that is, about the jurisdictional implications if the Court finds that it lacks subject-matter jurisdiction over a particular misjoined claim.  See Tr. at 43:14-44:1 (Allison).  They tentatively suggested that the case should remain in federal court, but confessed some discomfort with that resolution, in light of their uncertainty about the jurisdictional question.  See Tr. at 44:2-6 (Allison).

## LAW REGARDING DIVERSITY JURISDICTION

"Subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) requires: (i) complete diversity

among the parties; and (ii) that 'the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.'" Thompson v. Intel Corp., No. CIV 12-0620 JB/LFG, 2012 WL 3860748, at *12 (D.N.M. Aug. 27, 2012)(Browning, J.)(citing 28 U.S.C. § 1332(a)). As the Court has previously explained, "[t]he Supreme Court of the United States has described this statutory diversity requirement as 'complete diversity,' and it is present only when no party on one side of a dispute shares citizenship with any party on the other side of a dispute." McEntire v. Kmart Corp., No. CIV 09-0567 JB/LAM, 2010 WL 553443, at *3 (D.N.M. Feb. 9, 2010)(Browning, J.)(citing Strawbridge v. Curtiss, 7 U.S. 267, 267-68 (1806); McPhail v. Deere & Co., 529 F.3d 947, 951 (10th Cir. 2008)). The amount-in-controversy requirement is an "estimate of the amount that will be put at issue in the course of the litigation." Valdez v. Metro. Prop. & Cas. Ins. Co., No. CIV 11-0507 JB/KBM, 2012 WL 1132374, at *15 (D.N.M. Mar. 19, 2012)(Browning, J.)(citing McPhail v. Deere & Co., 529 F.3d at 956).

### 1.    Diversity of Citizenship.

For diversity-jurisdiction purposes, citizenship is determined by a person's domicile. See Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir. 1983). "A person's domicile is defined as the place in which the party has a residence in fact and an intent to remain indefinitely, as of the time of the filing of the lawsuit." McEntire v. Kmart Corp., 2010 WL 553443, at *3 (citing Crowley v. Glaze, 710 F.2d at 678). See Freeport-McMoRan, Inc. v. KN Energy, Inc., 498 U.S. 426, 428 (1991)(holding that diversity jurisdiction is assessed as of the time at which the suit is filed). If neither a person's residence nor the location where the person has an intent to remain can be established, the person's domicile is that of his or her parents at the time of the person's birth. See Gates v. Comm'r of Internal Revenue, 199 F.2d 291, 294 (10th Cir. 1952)("[T]he law assigns to

every child at its birth a domicile of origin.  The domicile of origin which the law attributes to an individual is the domicile of his parents.  It continues until another domicile is lawfully acquired."). Additionally, "while residence and citizenship are not the same, a person's place of residence is prima facie evidence of his or her citizenship."  McEntire v. Kmart Corp., 2010 WL 553443, at *3 (citing State Farm Mut. Auto. Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994)).

> **2.      Amount in Controversy.**

The existence of diversity jurisdiction must be established by a preponderance of the evidence.  See McPhail v. Deere & Co., 529 F.3d at 953.  In the context of establishing an amount-in-controversy, the defendant seeking removal could appear to be bound by the plaintiff's chosen amount of damages in the complaint, which would seem to allow a plaintiff to avoid federal jurisdiction "merely by declining to allege the jurisdictional amount [in controversy]."  McPhail v. Deere & Co., 529 F.3d at 955.  The Tenth Circuit's decision in McPhail v. Deere & Co. has foreclosed such an option from a plaintiff who wishes to remain in state court.  McPhail v. Deere & Co. holds that a defendant's burden in establishing jurisdictional facts is met if the defendant proves "jurisdictional facts that make it possible that $75,000 is in play."  McPhail v. Deere & Co., 529 F.3d at 955.

In McPhail v. Deere & Co., the Tenth Circuit relied on the Seventh Circuit's decision in Meridian Secs. Ins. Co. v. Sadowski, in which the Honorable Frank H. Easterbrook, Circuit Judge, explained how a removing defendant asserting diversity jurisdiction in the face of a silent complaint might proceed:

> [T]he removing defendant, as proponent of federal jurisdiction, must establish what the plaintiff stands to recover.  We have suggested several ways in which this may be done -- by contentions, interrogatories or admissions in state court; by calculation from the complaint's allegations[;] by reference to the plaintiff's informal estimates

> or settlement demands[;] or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands.   The list is not exclusive; any given proponent of federal jurisdiction may find a better way to establish what the controversy between the parties amounts to, and this demonstration may be made from either side's viewpoint (what a judgment would be worth to the plaintiff, or what compliance with an injunction would cost the defendant).   Once the estimate has been made -- and contested factual allegations that support the estimate have been established in a hearing under Rule 12(b)(1) by admissible evidence . . . then . . . the case stays in federal court unless it is legally certain that the controversy is worth less than the jurisdictional minimum.

441 F.3d at 541-42 (citations omitted).  The Tenth Circuit adopted the Seventh Circuit's reasoning, stating:

> Meridian eliminates the double standard that would come from misunderstanding what "preponderance of the evidence" requires.   The proponent of federal jurisdiction must prove contested facts; and because a defendant has no control over the complaint, he cannot put a large sum of money in controversy simply by demanding it, as a plaintiff often can.  But once those underlying facts are proven, a defendant (like a plaintiff) is entitled to stay in federal court unless it is "legally certain" that less than $75,000 is at stake.

McPhail v. Deere & Co., 529 F.3d at 954.  Thus, a defendant removing a matter to federal court has met his or her burden in proving the amount-in-controversy requirement if the defendant has proved any contested facts regarding the amount-in-controversy, and the amount-in-controversy is not legally certain to be less than $75,000.00.

As this Court has previously explained, "[i]n the absence of an explicit demand for more than $75,000.00, the defendant must show how much is in controversy through other means."  Salazar v. Geico Ins. Co.,   No. CIV 10-0118 JB/RLP, 2010 WL 2292930, at *3 (D.N.M. April 27, 2010)(Browning, J.)(citing McPhail v. Deere & Co., 529 F.3d at 955).  The Tenth Circuit has identified the means upon which a defendant may rely to show how much is in controversy: (i) the defendant may rely on an estimate of the potential damages from the allegations in the complaint;

(ii) the defendant may rely on other documentation to provide a basis for determining the amount in controversy, such as interrogatories obtained in the state court before removal, affidavits, or other evidence submitted in federal court afterward; and (iii) the defendant may rely on the plaintiff's proposed settlement amount if it appears to reflect a reasonable estimate of the plaintiff's claim, because the plaintiff's own estimation of its claim is a proper means of supporting the allegations in the notice of removal.  See Salazar v. Geico, 2010 WL 2292930, at *3 (citing McPhail v. Deere & Co., 529 F.3d at 956).  In McPhail v. Deere & Co., the Tenth Circuit found that the defendant met its burden to support diversity jurisdiction where the plaintiff's complaint was silent on the amount in controversy.  In its notice of removal, the defendant represented that the amount in controversy exceeded $75,000.00, and incorporated electronic-mail messages and letters of conversations between the parties attorneys discussing the value of the claim.  The defendant's counsel interpreted the conversation as meaning that the plaintiff was seeking more than $75,000.00, but the plaintiff's counsel refused to concede an amount in controversy in excess of $75,000.00, stating "it may very well be" that the amount in controversy would exceed $75,000.00.  529 F.3d at 957.  The Tenth Circuit found that the background information provided enough supplementary information for the district court to conclude that it was not legally certain that the plaintiff would recover an amount less than $75,000.00.  See 529 F.3d at 957.  In so ruling, the Tenth Circuit gave the example of a case in which a defendant has allegedly breached a contract and the plaintiff seeks damages in an indeterminate amount.  The Tenth Circuit suggested that "a defendant might support jurisdiction by attaching a copy of the contract, valued at more than $75,000, to the notice of removal."  529 F.3d at 956.

An example of an amount-in-controversy which is not legally certain to reach $75,000.00 is

seen in <u>Martin v. Franklin Capital Corp.</u>, 251 F.3d 1284 (10th Cir. 2001).  <u>See</u> 251 F.3d at 1291.  In <u>Martin v. Franklin Capital Corp.</u>, the defendant's notice of removal totaled up all of the dollar figures in the plaintiff's complaint, but some of the dollar amounts were considered background information that were not linked to the plaintiff's attempts to recover damages.  <u>See</u> 251 F.3d at 1291.  Because the Tenth Circuit found that the defendant's notice of removal depended on an erroneous "construction of the [plaintiff's] pleading," the Tenth Circuit held that the amount-in-controversy requirement was not met.  251 F.3d at 1291.

### LAW REGARDING REMOVAL AND REMAND

If a civil action filed in state court satisfies the requirements for original federal jurisdiction, the defendant may invoke 28 U.S.C. § 1441(a) to remove the action to the federal district court "embracing the place where such action is pending."  28 U.S.C. § 1441(a).  <u>See</u> <u>Huffman v. Saul Holdings Ltd. P'ship</u>, 194 F.3d 1072, 1076 (10th Cir. 1999)("When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court . . . .")(quoting <u>Caterpillar Inc. v. Lewis</u>, 519 U.S. at 68).  Under 28 U.S.C. § 1332(a), a federal district court possesses original subject-matter jurisdiction over a case when the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00.  <u>See</u> 28 U.S.C. § 1332(a); <u>Johnson v. Rodrigues</u>, 226 F.3d 1103, 1107 (10th Cir. 2000).  Diversity between the parties must be complete.  <u>See</u> <u>Caterpillar Inc. v. Lewis</u>, 519 U.S. at 68; <u>Radil v. Sanborn W. Camps, Inc.</u>, 384 F.3d 1220, 1225 (10th Cir. 2004).

To remove a case based on diversity, the diverse defendant must demonstrate that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied.  "It is well-

established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals." Pritchett v. Office Depot, Inc., 420 F.3d 1090, 1095 (10th Cir. 2005)(citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941), and United States ex rel. King v. Hillcrest Health Ctr., 264 F.3d 1271, 1280 (10th Cir. 2001)).  "All doubts are to be resolved against removal."  Fajen v. Found. Reserve Ins. Co., 683 F.2d 331, 333 (10th Cir. 1982).  "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."  Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002).

### 1.   The Presumption Against Removal.

Federal courts are courts of limited jurisdiction; thus, there is a presumption against removal jurisdiction, which the defendant seeking removal must overcome.  See Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995); Fajen v. Found. Reserve Ins. Co ., 683 F.2d at 333; Martin v. Franklin Capital Corp., 251 F.3d at 1290; Bonadeo v. Lujan, No. CIV 08-0812, 2009 WL 1324119, at *4 (D.N.M. Apr. 30, 2009)(Browning, J.)("Removal statutes are strictly construed, and ambiguities should be resolved in favor of remand.").  The defendant seeking removal must establish that federal court jurisdiction is proper "by a preponderance of the evidence."  McPhail v. Deere & Co., 529 F.3d at 953 (10th Cir. 2008).  See Bonadeo v. Lujan, 2009 WL 1324119, at *4 ("As the removing party, the defendant bears the burden of proving all jurisdictional facts and of establishing a right to removal.").  Because federal courts are courts of limited jurisdiction, the Tenth Circuit has ruled that "courts must deny such jurisdiction if not affirmatively apparent on the record."  Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp., 149 F. App'x 775, 778 (10th Cir. 2005)(unpublished).  On the other hand, this strict construction and presumption against removal should not be interpreted as

- 30-

a hostility toward removal cases in the federal courts.  McEntire v. Kmart Corp., No. CIV 09-0567

JB/LAM, 2010 WL 553443, at *2 (D.N.M. February 9, 2010)(Browning, J.)(citing Bonadeo v.

Lujan, 2009 WL 1324119, at *12 ("Strict construction does not mean judicial hostility toward

removal.  Congress provided for removal, and courts should not create rules that are at tension with

the statute's language in the name of strict construction.").

### 2.      Procedural Requirements for Removal.

Section 1446 of Title 28 of the United States Code governs the procedure for removal.

"Because removal is entirely a statutory right, the relevant procedures to effect removal must be

followed."  Thompson v. Intel Corp., 2012 WL 3860748, at *5.  A removal which does not comply

with the express statutory requirements is defective and must be remanded to state court.  See

Huffman v. Saul Holdings Ltd. P'ship, 194 F.3d at 1077.  See also Chavez v. Kincaid, 15 F. Supp.

2d 1118, 1119 (D.N.M. 1998)(Campos, J.)("The [r]ight to remove a case that was originally in state

court to federal court is purely statutory, not constitutional.").

Section 1446(a) of Title 28 of the United States Code provides that a party seeking removal

of a matter to federal court shall file a notice of removal in the district and division where the state

action is pending, "containing a short and plain statement of the grounds for removal, together with

a copy of all process, pleadings, and orders served upon such defendant or defendants in such action."

 Such notice of removal is proper if filed within thirty-days from the date when the case qualifies for

federal jurisdiction.  See Caterpillar Inc. v. Lewis, 519 U.S. at 68-69; 28 U.S.C. § 1446(b).  The

Tenth Circuit has further elaborated that, for the thirty-day period to begin to run, "this court

requires clear and unequivocal notice from the [initial] pleading itself" that federal jurisdiction is

available.  Akin v. Ashland Chem. Co., 156 F.3d 1030, 1036 (10th Cir. 1998).  The Tenth Circuit

specifically disagrees with "cases from other jurisdictions which impose a duty to investigate and determine removability where the initial pleading indicates that the right to remove may exist." Akin v. Ashland Chem. Co., 156 F.3d at 1036.[7]

### 3. Fraudulent Joinder.

"'[A] fraudulent joinder analysis [is] a jurisdictional inquiry.'"  Bio-Tec Envtl., LLC v. Adams, 792 F. Supp. 2d at 1214 (quoting Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d 1242, 1247 (10th Cir. 2004)).  "A district court may disregard a nondiverse party named in the state court complaint and retain jurisdiction if joinder of the nondiverse party is a sham or fraudulent." Baeza v. Tibbetts, Civ. No. 06-0407, 2006 U.S. Dist. LEXIS 95317, at *7 (D.N.M. July 7, 2006)(Vazquez, J.).  The Supreme Court has stated: "Merely to traverse the allegations upon which the liability of the resident defendant is rested or to apply the epithet 'fraudulent' to the joinder will not suffice: the showing must be such as compels the conclusion that the joinder is without right and made in bad faith." Chesapeake & Ohio Ry. Co. v. Cockrell, 232 U.S. 146, 152 (1914).  The Tenth Circuit has explained that allegations of fraudulent joinder complicate the analysis whether removal is proper, because, "[w]hile a court normally evaluates the propriety of a removal by determining whether the allegations on the face of the complaint satisfy the jurisdictional requirements, fraudulent joinder claims are assertions that the pleadings are deceptive." Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x 911, 913 (10th Cir. 2006)(unpublished opinion).  In cases where fraudulent joinder is asserted, the Tenth Circuit instructs that the court should "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." Dodd v. Fawcett Publications,

---

[7] Congress recently clarified removal jurisdiction and procedures in the Federal Courts Jurisdiction and Clarification Act of 2011, Pub. L. No. 112–63, 125 Stat. 758 (2011).  See Thompson v. Intel Corp., No. CIV-0620 JB/LFG, 2012 WL 3860748, at *12 n.5 (D.N.M. August 27,

Inc., 329 F.2d 82, 85 (10th Cir. 1964)(citations omitted).

 The party asserting fraudulent joinder bears the burden of proof.  See Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *1 (10th Cir. 2000)(unpublished table opinion) ("The case law places a heavy burden on the party asserting fraudulent joinder.").  "To justify removal based on diversity jurisdiction, a defendant must plead a claim of fraudulent joinder with particularity and prove the claim with certainty."  Couch v. Astec Indus., Inc., 71 F. Supp. 2d 1145, 1146-47 (D.N.M. 1999)(Baldock, J.).

 Before 2013, the most recent published Tenth Circuit decision to state the burden of proof for demonstrating fraudulent joinder was issued over forty years earlier in Smoot v. Chicago, Rock Island & Pacific Rail Road Co., 378 F.2d 879 (10th Cir. 1967).  The Tenth Circuit said that fraudulent joinder must be "established with complete certainty upon undisputed evidence."  Smoot v. Chicago, Rock Island & Pac. R.R. Co., 378 F.2d at 882.  In Smoot v. Chicago, Rock Island & Pacific Rail Road Co., the Tenth Circuit stated two bases for finding fraudulent joinder: (i) "[t]he joinder of a resident defendant against whom no cause of action is stated is patent sham;" or (ii) "though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists."  Smoot v. Chicago, Rock Island & Pac. R.R. Co., 378 F.2d at 882 (quoting Dodd v. Fawcett Pubs., Inc., 329 F.2d 82, 85 (10th Cir. 1964)).  In Smoot v. Chicago, Rock Island & Pacific Rail Road Co., the Tenth Circuit found fraudulent joinder because the non-liability of the joined party was "established with complete certainty upon undisputed evidence."  378 F.2d at 882.  "This does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete

_____

2012)(Browning, J.)(discussing the Act).

certainty."  Smoot v. Chicago, Rock Island & Pac. R.R. Co., 378 F.2d at 882.  In Smoot v. Chicago,

Rock Island & Pac. R.R. Co., the plaintiff died when his car collided with a freight train.  See  378

F.2d at 881.  The plaintiff's estate sued the railroad company and joined a non-diverse alleged

employee as a defendant. See 378 F.2d at 881.  It was undisputed in Smoot v. Chicago, Rock Island

& Pac. R.R. Co. that the diversity-destroying party's employment with the railroad company had

"terminated almost fifteen months before the collision and that he was in no way connected with the

acts of negligence ascribed to him."  378 F.2d at 881.

    In recent unpublished decisions, the Tenth Circuit has adopted different articulations of the

burden of proof for fraudulent joinder, two of which are from the United States Court of Appeals for

the Fifth Circuit.  In Montano v. Allstate Indemnity Co., the Tenth Circuit quoted favorably Hart v.

Bayer Corp., 199 F.3d 239 (5th Cir. 2000), which stated:

> To prove their allegation of fraudulent joinder [the removing parties] must
> demonstrate that there is no possibility that [plaintiff] would be able to establish a
> cause of action against [the joined party], in state court.  In evaluating fraudulent
> joinder claims, we must initially resolve all disputed questions of fact and all
> ambiguities in the controlling law in favor of the non-removing party.  We are then
> to determine whether that party has any possibility of recovering against the party
> whose joinder is questioned.

Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *4-5 (quoting Hart v. Bayer

Corp., 199 F.3d at 246)(alteration in original)(internal quotation marks omitted).  The Tenth Circuit

stated that the standard for proving fraudulent joinder "is more exacting than that for dismissing a

claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that,

absent fraudulent joinder, should be left to the state court where the action commenced."  Montano

v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *2.  The Tenth Circuit in Montano v.

Allstate Indemnity Co. also quoted from Batoff v. State Farm Ins. Co., 977 F.2d 848 (3d Cir. 1992),

which stated: "A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction." Batoff v. State Farm Ins. Co., 977 F.2d at 853.

In Nerad v. AstraZeneca Pharms., Inc., the Tenth Circuit adopted a different articulation of the burden of proof. The Tenth Circuit stated that, where fraudulent joinder is claimed, "the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant." Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x at 913 (citing Badon v. RJR Nabisco, Inc., 224 F.3d 382, 393 (5th Cir. 2000)). The Tenth Circuit explained that "[a] 'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law." 203 Fed. App'x. at 913.

The Fifth Circuit recognized the inconsistencies in the standard for fraudulent joinder and directly addressed the problem in Travis v. Irby, 326 F.3d 644 (5th Cir. 2003):

> Neither our circuit nor other circuits have been clear in describing the fraudulent joinder standard. The test has been stated by this court in various terms, even within the same opinion. For example, the Griggs [v. State Farm Lloyds, 181 F.3d 694 (5th Cir. 1999),] opinion states, "To establish that a non-diverse defendant has been fraudulently joined to defeat diversity, the removing party must prove . . . that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court." 181 F.3d at 699 [citations omitted]. The Griggs opinion later restates that test as follows -- "Stated differently, we must determine whether there is any reasonable basis for predicting that [the plaintiff] might be able to establish [the non-diverse defendant's] liability on the pleaded claims in state court." 181 F.3d at 699 [citations omitted]. Similarly, in summing up federal law, Moore's Federal Practice states at one point: "To establish fraudulent joinder, a party must demonstrate … the absence of any possibility that the opposing party has stated a claim under state law." 16 Moore's Federal Practice § 107.14[2][c][iv][A] (emphasis added). It then comments: "The ultimate question is whether there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved." Id. (emphasis added). Although these tests appear dissimilar, "absolutely no possibility" vs. "reasonable basis," we must assume that they are meant to be equivalent because each is presented as a restatement of the other.

326 F.3d at 647 (emphasis in original).  The Fifth Circuit has settled upon this phrasing:

> the test for fraudulent joinder is whether the defendant has demonstrated that there is
> no possibility of recovery by the plaintiff against an in-state defendant, which stated
> differently means that there is no reasonable basis for the district court to predict that
> the plaintiff might be able to recover against an in-state defendant.

Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004)("To reduce possible confusion,

we adopt this phrasing of the required proof and reject all others, whether the others appear to

describe the same standard or not.").

In Zufelt v. Isuzu Motors America, L.C.C., 727 F. Supp. 2d 1117, 1124 (D.N.M.

2009)(Browning, J.), the Court addressed the standard courts should use when addressing fraudulent

joinder and concluded that, to establish that a party was fraudulently joined, a defendant has the

burden of demonstrating that "there is no possibility that the plaintiff would be able to establish a

cause of action" against the party alleged to be fraudulently joined.  727 F. Supp. 2d at 1124-25

(citing Montano v. Allstate Indem. Co., 211 F.3d 1278, 2000 WL 525592, at *4-5).  The Court

explained:

> [T]his District has consistently adopted the "possibility" standard when
> assessing fraudulent joinder claims. See Allen v. Allstate Ins. Co., No. Civ. 08-0733,
> 2008 U.S. Dist. LEXIS 108948, at *14 (D.N.M. Oct. 31, 2008)(Browning,
> J.)(holding that the claims asserted against the non-diverse defendant were "possibly
> viable under New Mexico law, and . . . sufficient to preclude federal jurisdiction");
> Baeza v. Tibbetts, 2006 U.S. Dist. LEXIS 95317, at *11 (stating that "[r]emand is
> required if any one of the claims against [the defendant] is possibly viable");
> Provencio v. Mendez, No. Civ. 05-623, 2005 U.S. Dist. LEXIS 39012, at *25
> (D.N.M. Sept. 29, 2005)(Browning, J.)(stating that "there must be no possibility the
> [p]laintiffs have a claim against [the non-diverse defendant].");  Couch v. Astec
> Indus., Inc., 71 F. Supp. 2d at 1147 (stating that, to defeat removal jurisdiction, "[t]he
> plaintiff need only demonstrate the possibility of the right to relief.").  This Court, in
> Couch v. Astec Inds., Inc., noted with approval the language of the United States
> Court of Appeals for the Eleventh Circuit, which states that "if there is *even a*
> *possibility* that a state court would find that the complaint states a cause of action
> against any one of the resident defendants, the federal court must find that the joinder

was proper and remand the case to the state court." Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1147 (quoting Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998))(emphasis in original).

Zufelt v. Isuzu Motors America, L.C.C., 727 F. Supp. 2d at 1229.

In Brazell v. Waite, No. 12-4047, 2013 WL 2398893 (10th Cir. 2013)(unpublished opinion), the Tenth Circuit stated that the "removing party must show that the plaintiff has 'no cause of action' against the fraudulently joined defendant," but it did not further elaborate on that burden. 2013 WL 2398893, at *3 (citing Dodd v. Fawcett Pubs., Inc., 329 F.2d 82, 85 (10th Cir. 1964); Roe v. Gen. Am. Life Ins. Co., 712 F.2d 450, 452 n.* (10th Cir. 1983)).

In 2013, the Tenth Circuit published its first opinion since 1946 regarding the burden of proof for demonstrating fraudulent joinder: "'To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" Dutcher v. Matheson, 733 F.3d 980, 988 (10th Cir. 2013)(Briscoe, J., joined by Seymour, J. and Bacharach, J.)(quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011)).  In Dutcher v. Matheson, the Tenth Circuit reviewed a district court's holding that it had diversity jurisdiction over a case where Utah citizens sued ReconTrust, a Texas-based national bank, Stuart T. Matheson, a Utah citizen, and Matheson's law firm. See Dutcher v. Matheson, 733 F.3d at 983, 987.  The plaintiffs alleged that Matheson and his law firm enabled ReconTrust to conduct an illegal non-judicial foreclosure by holding the foreclosure sales on behalf of the Texas-based bank.  See 733 F.3d at 983.  The defendants removed the case to federal court and alleged that the plaintiffs fraudulently joined the Utah defendants.  See 733 F.3d at 983.  The district court agreed, finding that, under Utah law, "an attorney cannot be held liable to a non-client absent fraud, collusion or

privity of contract." 733 F.3d at 988. The Tenth Circuit disagreed with that characterization of Utah

law, finding instead that, in the case on which the defendants relied, the Utah Supreme Court "has

simply limited the circumstances in which a lawyer owes a duty of care to non-clients from actions

arising out of the provision of legal services." 733 F.3d at 988. In rejecting the claim of fraudulent

joinder, the Tenth Circuit said

> that does not mean that the plaintiffs have stated a valid claim against Matheson and
> his law firm. Or even that Matheson and his law firm are not somehow fraudulently
> joined. But the defendants needed to clear a high hurdle to prove something they
> have yet to prove, i.e. fraudulent joinder.

733 F.3d at 989.

The Tenth Circuit did not elaborate on the defendant's burden to show fraudulent joinder,

except to say that it is "a high hurdle." 733 F.3d at 989. It quoted, however, Cuevas v. BAC Home

Loans Servicing, LP, a Fifth Circuit opinion that repeats the clarified standard from Smallwood v.

Ill. Cent. R.R. Co. See Dutcher v. Matheson, 733 F.3d at 988 (10th Cir. 2013)(quoting Cuevas v.

BAC Home Loans Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011).

> Under the second way, the test is "whether the defendant has demonstrated that there
> is no possibility of recovery by the plaintiff against an in-state defendant, which
> stated differently means that there is no reasonable basis for the district court to
> predict that the plaintiff might be able to recover against an in-state defendant."
> [Smallwood v. Ill. Cent. R.R. Co., 385 F.3d at 573.] If there is no reasonable basis of
> recovery, then the court can conclude that the plaintiff's decision to join the in-state
> defendant was indeed improper, unless that showing compels the dismissal of all
> defendants. There is no improper joinder if the defendants' showing compels the
> same result for the resident and nonresident defendants, because this simply means
> that the plaintiff's case is ill founded as to all of the defendants. Such a defense is
> more properly an attack on the merits of the claim, rather than an inquiry into the
> propriety of the joinder of the in-state defendant.

Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249 (emphasis in original)(some internal

quotation marks and citations omitted). Based on the Tenth Circuit's history of relying on Fifth

Circuit analysis in fraudulent joinder cases, the Tenth Circuit would likely approve this additional explanation of the fraudulent joinder standard.  Accordingly, the Court will use the following standard for fraudulent joinder: whether the defendant has demonstrated that there is no possibility that the plaintiff will recover against an in-state defendant.  Cf. Zufelt v. Isuzu Motors America, L.C.C., 727 F. Supp. 2d 1117, 1124-25 (D.N.M. 2009)(Browning, J.)(concluding that fraudulent joinder occurs when "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined).

An order to remand by a district court based on a finding of fraudulent joinder is not reviewable by the Tenth Circuit.  See Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x at 913 (holding that, because the district court remanded based on its conclusion that it lacked subject-matter jurisdiction at the time of removal, 28 U.S.C. § 1447(d) precluded the Tenth Circuit from reviewing the order).  The fraudulent-joinder inquiry on a motion to remand is a subject-matter jurisdiction inquiry.  See Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d at 1247.

### 4.    Procedural misjoinder.[8]

Rule 20 of the Federal Rules of Civil Procedure provides:

**(a) Persons Who May Join or Be Joined.**

**(1) *Plaintiffs*.**  Persons may join in one action as plaintiffs if:

---

[8] The Court refers to the doctrine as "procedural misjoinder," rather than "fraudulent misjoinder," because of the confusion that the word "fraudulent" has caused in the fraudulent joinder context.  As the Honorable Martha A. Vasquez, District Judge for the United States District Court for the District of New Mexico, once explained: "Fraudulent joinder is a term of art.  It does not reflect on the integrity of plaintiff or counsel, but rather exists regardless of the plaintiff's motives when the circumstances do not offer any other justifiable reason for joining the defendant."  Baeza v. Tibbetts, No. 06-0407 MV/WPL, 2006 WL 2863486, at *1 n.1 (D.N.M. July 7, 2006)(Vasquez, J.).  The Court will refer to the doctrine as "procedural misjoinder" to avoid expanding that confusion.

> **(A)** they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> **(B)** any question of law or fact common to all plaintiffs will arise in the action.
>
> **(2)** *Defendants.*  Persons -- as well as a vessel, cargo, or other property subject to admiralty process in rem -- may be joined in one action as defendants if:
>
> > **(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> >
> > **(B)** any question of law or fact common to all defendants will arise in the action.
>
> **(3)** *Extent of Relief.* Neither a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded. The court may grant judgment to one or more plaintiffs according to their rights, and against one or more defendants according to their liabilities.

Fed. R. Civ. P. 20(a).

"Procedural misjoinder," also known as "fraudulent misjoinder," is a recent development that is related to fraudulent joinder, but distinct from it.  As Professor E. Farish Percy of the University of Mississippi School of Law has explained:

> Fraudulent misjoinder occurs when a plaintiff sues a diverse defendant in state court and joins a non-diverse or in-state defendant even though the plaintiff has no reasonable procedural basis to join such defendants in one action.  While the traditional fraudulent joinder doctrine inquires into the substantive factual or legal basis for the plaintiff's claim against the jurisdictional spoiler, the fraudulent misjoinder doctrine inquires into the procedural basis for the plaintiff's joinder of the spoiler.  Most state joinder rules are modeled after the federal joinder rule that authorizes permissive joinder of parties when the claims brought by or against them arise "out of the same transaction, occurrence, or series of transactions or occurrences" and give rise to a common question of law or fact.  Thus, in a case where the joined claims are totally unrelated, a federal district court may find removal jurisdiction pursuant to the fraudulent misjoinder doctrine even though the plaintiff has a reasonable substantive basis for the claim against the jurisdictional

spoiler.

E. Farish Percy, <u>Defining the Contours of the Emerging Fraudulent Misjoinder Doctrine</u>, 29 Harv.

J.L. & Pub. Pol'y 569, 572 (2006)(footnotes omitted).

The Eleventh Circuit formulated the doctrine in <u>Tapscott v. MS Dealer Service Corp.</u>, and

explained its purpose as follows:

> Misjoinder may be just as fraudulent as the joinder of a resident defendant against
> whom a plaintiff has no possibility of a cause of action.  A defendant's "right of
> removal cannot be defeated by a fraudulent joinder of a resident defendant having no
> real connection with the controversy."  <u>Wilson v. Republic Iron & Steel Co.</u>, 257
> U.S. 92, 97 . . . (1921).

<u>Tapscott v. MS Dealer Serv. Corp.</u>, 77 F.3d at 1360 (footnote omitted).

<u>Tapscott v. MS Dealer Service Corp.</u>'s facts illustrate the doctrine's operation.  The case

involved two putative state law class actions, joined together in a single case: (i) a class action in

which an Alabama resident alleged that four defendants, including an Alabama resident, had violated

various provisions of Alabama fraud and consumer-protection law in connection with the "the sale

of 'service contracts' on automobiles sold and financed in Alabama,"  77 F.3d at 1355; and (ii)  a

class action in which Alabama alleged three defendants, including Lowe's Home Centers, a North

Carolina resident, had violated Alabama consumer-protection law in connection with the sale of

retail product, <u>see</u> 77 F.3d at 1355.  The second class action named Lowe's Home Centers as "the

putative defendant class representative for a 'merchant' class."  77 F.3d at 1355.  This unified case

matched particular plaintiffs "with particular defendants against whom they allege individual

claims;" as relevant here, the only two class representatives for the class action were Alabama

residents, and they asserted claims only against Lowe's Home Centers.  77 F. 3d at 1359-60.

The district court concluded that there was no allegation of joint liability or conspiracy, and

that the claims involved in the car-sales class action were "wholly distinct from the alleged

transactions involved in the" retail-products class action.  77 F.3d at 1360.  Rather, "[t]he only

similarity between" the two classes was that they both alleged violations of Alabama statutory law;

"[s]uch commonality on its face [was] insufficient for joinder."  77 F.3d at 1360.  The Eleventh

Circuit agreed and explained:

> Although certain putative class representatives may have colorable claims against
> resident defendants in the putative "automobile" class, these resident defendants
> have no real connection with the controversy involving [the retail-products plaintiffs
> and] Lowe's in the putative "merchant" class action.  We hold that the district court
> did not err in finding an attempt to defeat diversity jurisdiction by fraudulent joinder.
> We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the
> district court that Appellants' attempt to join these parties is so egregious as to
> constitute fraudulent joinder.

77 F.3d at 1360.

The procedural misjoinder doctrine's reach outside the Eleventh Circuit is unclear.  The

Tenth Circuit recently described the doctrine's status as follows:

> It appears that the Fifth Circuit may also accept procedural misjoinder.  See Crockett
> v. R.J. Reynolds Tobacco Co., 436 F.3d 529, 532-33 (5th Cir. 2006); In re Benjamin
> Moore & Co., 309 F.3d 296, 298 (5th Cir. 2002).  No circuit has rejected the
> doctrine, but the district courts and the commentators are split.  Compare Percy, 29
> Harv. J.L. & Pub. Pol'y at 572; Laura J. Hines and Steven S. Gensler, Driving
> Misjoinder: The Improper Party Problem in Removal Jurisdiction, 57 Ala. L. Rev.
> 779, 780 (2006)(advocating adoption of the doctrine), and Greene v. Wyeth, 344 F.
> Supp. 2d 674, 684 (D. Nev. 2004); Burns v. W.S. Life Ins. Co., 298 F. Supp. 2d 401,
> 402-03 (S.D. W. Va. 2004)(applying the doctrine), with Ronald A. Parsons, Jr.,
> Should the Eighth Circuit Recognize Procedural Misjoinder?, 53 S.D. L. Rev. 52, 53
> (2008)(urging the circuit court to decline to recognize the doctrine), and Rutherford
> v. Merck & Co., Inc., 428 F. Supp. 2d 842, 851-52 (S.D. Ill. 2006)(rejecting the
> doctrine).

Lafalier v. State Farm Fire and Cas. Co., 391 F. App'x at 739.  While the Tenth Circuit recognized

that "[t]here may be many good reasons to adopt procedural misjoinder," it declined to adopt the

doctrine, because it would not have changed the result in that case.  391 F. App'x at 739.  See 14B

C. Wright & A. Miller, Federal Practice & Procedure § 3723, at 867-77 & n. 122 (3d ed. 2009)(confirming the developing doctrine's unclear status).

## ANALYSIS

The Court adopts the procedural misjoinder doctrine in part, because it is necessary to protect a defendant's removal rights. The Court concludes, however, that the claims in this case are not procedurally misjoined. The Court will, therefore, remand the case.

## I.        THE COURT ADOPTS THE PROCEDURAL MISJOINDER DOCTRINE IN PART.

The Court adopts the procedural misjoinder doctrine, but only in part. Conscious of its jurisdictional limits, the Court adopts the doctrine only for cases like this one, where the allegedly procedurally misjoined nondiverse defendant is also a citizen of the state in which the plaintiff brought the state court action. The Court does not decide whether it will apply the doctrine in cases that do not fit into that pattern, but it is unlikely to do so. With respect to the doctrine's merits, while it is not faultless, the Court believes that it is necessary to effectuate Congressional intent to permit removal. Without it, clever plaintiffs can too easily evade the federal removal scheme in a way the procedural rules do not permit.

After Tapscott v. MS Dealer Service Corp., most of the development in this area has come from the district courts, for a simple reason: the removal statutes limit remand orders' appealability. See 28 U.S.C. § 1447(d). District courts in the Tenth Circuit divide about the doctrine's wisdom. See, e.g., Nungesser v. Bryant, No. 07-1285-WEB, 2007 WL 4374022, at *7  (D. Kan. Dec. 7, 2007)(Brown, J.)(applying the doctrine); Halliburton v. Johnson & Johnson, Nos. CIV–13–832–L, CIV–13–833–L, CIV–13–834–L, CIV–13–836–L, CIV–13–838–L, CIV–13–839–L, CIV–13–840– L, CIV–13–841–L, CIV–13–844–L, CIV–13–845–L, CIV–13–846–L, 2013 WL 5719016, at *3

(W.D. Okla. Oct. 13, 2013)(Leonard, J.)(citing cases criticizing the doctrine and saying that, "[g]iven this criticism and the lack of guidance by the Tenth Circuit, the court declines to adopt the procedural misjoinder doctrine and to extend it to the plaintiffs' claims at issue in these actions."(footnote omitted)).  But see Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1147 (listing among types of fraudulent joinder that courts have identified "where a plaintiff joins a diverse defendant with a non-diverse defendant as to whom no joint, several, or alternative liability exists, and where plaintiff's claim against the non-diverse defendant has no real connection to the claim against the diverse defendant.").  Because joinder standards tend to be liberal, district courts in the Tenth Circuit have frequently declined to decide whether to adopt the doctrine, and instead concluded that the doctrine would make no difference in the case before them.  See, e.g., Cline v. Blackmon Mooring of Okla. City, Inc., No. CIV-11-1136-HE , 2012 WL 255675, at *1 (W.D. Okla. Jan. 27, 2012)(Heaton, J.)("The court concludes it need not undertake [the] task [of deciding whether to adopt the doctrine] here, however, as the doctrine would not save jurisdiction in this case even if it applied.").

The doctrine's status is no clearer outside the Tenth Circuit.  The Eighth and Ninth Circuits have acknowledged the doctrine, but declined to adopt it, because the doctrine would not resolve the case before them.  See In re Prempro Prods. Liab. Litig., 591 F.3d 613, 622 (8th Cir. 2010)("[W]e conclude that even if we adopted the doctrine, the plaintiffs' alleged misjoinder in this case is not so egregious as to constitute fraudulent misjoinder"); California Dump Truck Owners Ass'n v. Cummins Engine Co., 24 F. App'x 727, 729 (9th Cir. 2001)(unpublished)("[W]e will assume, without deciding, that this circuit would accept the doctrines of fraudulent and egregious joinder as applied to plaintiffs.").  District courts outside the Tenth Circuit are as divided as district courts

- 44-

within it.  In <u>Greene v. Wyeth</u>, 344 F. Supp. 2d 674 (D. Nev. 2004), the Honorable Larry R. Hicks, United States District Judge for the United States District Court for the District of Nevada acknowledged the division among federal courts on several of the doctrine's aspects, but adopted the doctrine, principally because the plaintiffs' improper joinder frustrated "the [defendants'] statutory right of removal."  344 F. Supp. 2d at 684-85.  The court concluded that, under its authority under rule 21 of the Federal Rules of Procedure to add or drop parties, it would "sever claims where the joinder is procedurally inappropriate and clearly accomplishes no other objective than the manipulation of the forum, and where the rights of the parties and interest of justice is best served by severance."  344 F. Supp. 2d at 685.

Perhaps the most thorough case rejecting the doctrine is <u>Rutherford v. Merck & Co.</u>, 428 F. Supp. 2d 842 (S.D. Ill. 2006)(Murphy, C.J.).  In that case, the Honorable G. Patrick Murphy, Chief United States District Judge of the United States District Court for the Southern District of Illinois, declined to adopt the doctrine, concluding that "whether viable state-law claims have been misjoined -- even 'egregiously' misjoined -- is a matter to be resolved by a state court."  428 F. Supp. 2d at 851.  Chief Judge Murphy offered six reasons for this conclusion.  First, in his view, "[n]othing in the jurisprudence of the Supreme Court of the United States regarding fraudulent joinder suggests that the joinder of non-fraudulent claims is a question that implicates the subject matter jurisdiction of a federal court."  428 F. Supp. 2d at 851.  Second, "matters of state civil procedure, including, presumably, joinder of parties and claims, have no bearing on the existence or nonexistence of federal subject matter jurisdiction in a given case."  428 F. Supp. 2d at 851 (citing <u>Shamrock Oil & Gas Corp. v. Sheets</u> and <u>Chicago, R.I. & P.R. Co. v. Stude</u>, 346 U.S. 574 (1954)).  Third, it improperly expands federal diversity jurisdiction.  <u>See</u> 428 F. Supp. 2d at 852.  Fourth, the Seventh

Circuit, in which the Southern District of Illinois sits, prefers clear, easily applied jurisdictional rules, because they better serve federalism interests, because they respect the plaintiff's choice of forum, and because incorrect jurisdictional decisions' process costs are significant.  See 428 F. Supp. 2d at 852.  Fifth, the doctrine's contours are confusing, particularly with respect to the Eleventh Circuit's "egregiousness" overlay's meaning and "whether egregious misjoinder is tested using federal or state procedural rules."  428 F. Supp. 2d at 853-54.  In particular, Chief Judge Murphy rejected "the view that egregious misjoinder is tested by whether there is a reasonable probability that a state court would find proper joinder," because a removed case is subject to federal rules, and because

> any jurisdictional principle that requires federal courts as a regular matter to construe state procedural rules and to pronounce on the propriety of joinder thereunder strikes the Court as an exceptionally weird and pernicious intrusion by federal courts into matters properly of state concern and a disruption of the orderly development of state law.

428 F. Supp. 2d at 854.  Sixth, and finally, Chief Judge Murphy "predict[ed] that no [clear] standards will emerge," because joinder standards "are of necessity highly discretionary, involving intensely case-specific decisions about the fairest and most economical way to adjudicate particular claims."  428 F. Supp. 2d at 855.  In other words, Chief Judge Murphy "fails to see how the adoption of the Tapscott doctrine, which elevates a court's discretion concerning joinder into a jurisdictional principle, is likely to promote predictable results at either the trial court level or on review."  428 F. Supp. 2d at 855.

The academic literature also divides.  Professor Laura J. Hines of the University of Kansas School of Law and Professor Steven S. Gensler of the University of Oklahoma College of Law argue that the problem that the doctrine addresses -- joinder of unrelated claims to prevent diversity -- is

widespread and increasing.  See Hines & Gensler, supra at 808.  In their view, federal courts are in a better position to respond to that problem than state courts, because "[i]f a defendant's sole recourse is to seek severance in state court, then access to the federal courthouse becomes dependent on the peculiar party structure practices of the states," and because the removal statutes' time limitations present serious practical problems with the state-court-severance solution.  Hines & Gensler, supra at 809-11.  Professor Percy also supports the doctrine in his article.  While recognizing that the doctrine introduces complexity and implicates federalism concerns, Percy submits that "the fraudulent misjoinder doctrine is necessary to protect a defendant's right to remove.  Otherwise, a plaintiff could defeat removal by unreasonably joining a spoiler."  Percy, supra at 588-89.  In Professor Percy's view, the state-court-severance solution presents two problems: first, the one-year removal time limit may expire before the state court decides a motion to sever; and second, it would violate the voluntary-involuntary rule.  See Percy, supra, at 589.

In the third and final major article on the subject, Ronald A. Parsons, Jr., a South Dakota practitioner, raises four principal reasons to reject the doctrine.  First, in Parsons' view, it contravenes congressional intent as expressed by section 1441(c)'s revision history: while an older version of the statute "provided that an action containing both removable and non-removable state law claims could be removed and the claims severed if they were deemed to be 'separate and independent,'" Congress subsequently "amended section 1441(c) to eliminate diversity cases from its scope and restrict its application to cases involving a claim arising under federal law."  Parsons, supra at 62-64.[9]  In his view, the procedural misjoinder doctrine is "a judicially created response to

---

[9] According to Parsons:

Prior to 1990, the federal removal statute, 28 U.S.C. § 1441(c), provided that an

Congress's narrowing of the removal statute, utilizing the concept as a means for allowing the removal of a case where a state claim that falls within diversity jurisdiction is joined with a state claim that does not."  Parsons, supra at 64.  Second, Parsons points out that the federal courts have limited jurisdiction, and argues that this doctrine impermissibly expands it and that, insofar as the doctrine requires the federal courts to consider delicate matters of state joinder law, the doctrine intrudes into an area of state concern.  See Parsons, supra at 65-66.  Third, the doctrine is unclear and unpredictable.  See Parsons, supra at 66-67.  Fourth, and finally, the state-court-severance solution is available, and the practical obstacles, i.e., the one-year removal timing limitation, are probably insignificant in most cases.  See Parsons, supra, at 67-68.  See also 14B C. Wright & A. Miller, supra § 3273 at 877 (suggesting that it might be more efficient for a defendant to move the state court to sever the claims).

Even within those courts that have adopted the doctrine, its contours remain unsettled.  There are two principal areas of disagreement: first, whether the plaintiff must have misjoined the

---

action containing both removable and non-removable state law claims could be removed and the claims severed if they were deemed to be "separate and independent."  Claims were separate and independent within the meaning of that statute if they did not arise out of the same common nucleus of facts and if they sought completely separate redress for unrelated legal injuries.  Under the pre-1990 version of section 1441(c), where claims did not share their genesis in a common factual nucleus and sought separate redress for unrelated injuries, a diverse defendant was authorized to remove an entire case, and district courts were authorized to accept jurisdiction over the removable claims and remand the non-removable claims involving nondiverse defendants to state court.

In 1990, however, Congress amended section 1441(c) to eliminate diversity cases from its scope and restrict its application to cases involving a claim arising under federal law.

Parsons, supra at 63.

defendants with some degree of "egregiousness" or bad faith; and second, whether federal or state

joinder law controls the misjoinder question.

On balance, the Court believes the procedural misjoinder doctrine's proponents have the

better argument, at least as the doctrine applies to these facts.  The removal statutes support the

Court's application of the doctrine in this case.  They provide, in relevant part:

> **(a) Generally.** -- Except as otherwise expressly provided by Act of Congress, any
> civil action brought in a State court of which the district courts of the United States
> have original jurisdiction, may be removed by the defendant or the defendants, to the
> district court of the United States for the district and division embracing the place
> where such action is pending.
>
> **(b) Removal based on diversity of citizenship. --**
>
>> **(1)** In determining whether a civil action is removable on the basis of the
>> jurisdiction under section 1332(a) of this title, the citizenship of defendants
>> sued under fictitious names shall be disregarded.
>>
>> **(2)** A civil action otherwise removable solely on the basis of the jurisdiction
>> under section 1332(a) of this title may not be removed if any of the parties in
>> interest properly joined and served as defendants is a citizen of the State in
>> which such action is brought.

28 U.S.C. § 1441.  The key phrase is in section 1441(b)(2): "properly joined."  That phrase indicates

that, when determining whether it has removal jurisdiction over a purported diversity case, the Court

may -- indeed, must -- inquire into whether the plaintiff properly joined a defendant who resides in

the State in which the plaintiff brought the action.  The alternative reading of the statute would

render the word "properly" without meaning, which would contravene one of the most basic

statutory-construction principles: the surplusage canon.  See United States v. Butler, 297 U.S. 1

(1936)("These words cannot be meaningless, else they would not have been used.");  Antonin Scalia

& Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012)("If possible, every

word and every provision is to be given effect (*verba cum effectu sunt accipienda*).  None should be

ignored.   None   should   needlessly   be   given   an   interpretation   that   causes   it . . . to   have   no

consequence." (footnote omitted)).  If a party is properly joined, its citizenship is relevant; if a party

is not properly joined, its citizenship is irrelevant.  That Congressional directive is sufficient to

justify and require the Court's application of the procedural misjoinder doctrine in cases like this

one, where a procedurally misjoined nondiverse defendant is also a resident defendant.

       The Court must, however, acknowledge that the doctrine has largely developed without a

statutory tether -- and certainly without the one the Court concludes it is compelled by and restricted

by in this case.  This approach to jurisdictional fraud bears a distinguished pedigree.  The Supreme

Court explained in a similar context almost a century ago:

> A civil case, at law or in equity, presenting a controversy between citizens of
> different states, and involving the requisite jurisdictional amount, is one which
> may be removed by the defendant, if not a resident of the state in which the case is
> brought; and this right of removal cannot be defeated by a fraudulent joinder of a
> resident defendant having no real connection with the controversy.  So, when in such
> a case a resident defendant is joined with the nonresident, the joinder, even although
> fair upon its face, may be shown by a petition for removal to be only a fraudulent
> device to prevent a removal[.]

Chesapeake & O. R. Co. v. Cockrell, 232 U.S. at 152 (citations omitted).  It is true that this language

speaks to the more familiar fraudulent-joinder doctrine.  The language nonetheless stands for the

principle that federal courts may craft extra-statutory mechanisms to protect a defendant's statutory

right to remove.

       That the procedural misjoinder doctrine is concerned with claims, and not parties, makes no

difference.  As the Eleventh Circuit explained:

> Misjoinder may be just as fraudulent as the joinder of a resident defendant against
> whom a plaintiff has no possibility of a cause of action.  A defendant's "right of
> removal cannot be defeated by a fraudulent joinder of a resident defendant having no
> real connection with the controversy."  Wilson v. Republic Iron & Steel Co., 257
> U.S. 92, 97 . . . (1921).

Tapscott v. MS Dealer Serv. Corp., 77 F.3d at 1360 (footnote omitted).  Both doctrines' goal is to ensure that a plaintiff does not abuse procedural rules to "fraudulently" keep a defendant out of federal court.  See 14B C. Wright & A. Miller, supra § 3273, at 876 (arguing that fraudulent joinder and procedural misjoinder, together with a third doctrine, "hold the promise of providing strong protection for the defendant's statutory right to remove.").  That is, what makes removal prevention "fraudulent" is the misuse of procedural rules.  In the fraudulent joinder context, although courts measure "fraud" using a quasi-merits determination, it is not the merits qua the merits that concern the courts; rather, it is whether the plaintiff has confected an entirely nonmeritorious straw claim against a nondiverse defendant and attached it to a meritorious claim against a diverse defendant as an improper removal-prevention device.  The same principle justifies the procedural misjoinder doctrine: courts are concerned with whether the plaintiff has brought a meritorious claim against a nondiverse defendant and attached it to a meritorious but entirely unrelated claim against a diverse defendant as a different improper removal-prevention device.  This description clarifies what the doctrines' complexities obscure: fraudulent joinder's quasi-merits inquiry and procedural misjoinder's relatedness inquiry aim at the same target, i.e., to ensure a plaintiff cannot defeat a defendant's right of removal by misusing procedural rules.  If the Court's powers to protect defendants' removal rights allow the Court to prevent plaintiffs from joining "a defendant having no real connection with the controversy," Chesapeake & O. R. Co. v. Cockrell, 232 U.S. at 152, the Court knows no sound reason it must permit plaintiffs to join controversies with no real connection to each other, thereby blessing a more indirect version of the same prohibited tactic.

All of this analysis rests, however, on a questionable premise: that the federal courts have the power to create extra-statutory jurisdictional-fraud doctrines.  Although the Supreme Court erected

this judicially driven approach to jurisdictional fraud, the Court is not persuaded it rests on a sound

jurisdictional foundation.  The Honorable Amul R. Thapar, United States District Judge for the

United States Court for the Eastern District of Kentucky, has explained:

> Despite [the] ancient maxim that courts may not act without jurisdiction, the fraudulent-joinder inquiry requires them to do just that.  The court must examine the plaintiff's claim against the non-diverse defendant -- a claim over which it affirmatively lacks jurisdiction -- and determine whether the allegations state a "colorable basis" for relief under state law. . . .  If the court determines that the non-diverse defendant has been fraudulently joined, the remedy is to dismiss the claims against him.  True, this is a "limited . . . examination of the merits of the [ ] claims," not a full blown adjudication.  Winburn v. Liberty Mut. Ins. Co., 933 F. Supp. 664, 666 (E.D. Ky. 1996).  But just as one cannot be a little bit pregnant or a little bit dead, the notion that courts can have a little bit of jurisdiction -- enough for a quick peek at the merits of a claim, but no more -- runs contrary to bedrock principles.  See [Ex Parte] McCardle, 7 Wall. [506, 514 (1868)] ("Without jurisdiction [a] court cannot proceed at all in any cause.")(emphasis added); May v. Wal-Mart Stores, Inc., 751 F. Supp. 2d 946, 951 (E.D. Ky. 2010)("Federal jurisdiction is a binary choice.  The switch is either on or off.").
>
> The "familiar law that a federal court always has jurisdiction to determine its own jurisdiction," United States v. Ruiz, 536 U.S. 622, 628 . . . (2002), does not salvage fraudulent joinder.  If the Constitution or a statute authorizes federal jurisdiction in only limited circumstances, such as where the parties are of diverse citizenship, it is unobjectionable that a federal court has jurisdiction to determine whether those jurisdictional prerequisites are satisfied.  Fraudulent joinder, though, requires courts to do something quite different.  It requires courts to examine the merits of claims over which everyone agrees the court lacks jurisdiction.  That is a very different enterprise from determining whether the court has jurisdiction over the claim in the first place.

Murriel-Don Coal Co., Inc. v. Aspen Ins. UK Ltd., 790 F. Supp. 2d 590, 595 (E.D. Ky. 2011)

(emphasis in original)(selected citations and quotations omitted).  Judge Thapar suggests "a better

way" to handle the concededly serious problems to which the fraudulent-joinder doctrine is

addressed: remand such cases and "leave the decision to the state courts, who are experts on

questions of state law."  790 F. Supp. 2d at 596-97.

The Court understands Judge Thapar's discomfort with the fraudulent-joinder doctrine's

jurisdictional foundation, and, to a degree, shares it.  Three background assumptions against which

the doctrine developed no longer obtain.  First, at the time the doctrine developed, the concept of

"joinder" did not refer to joinder in the modern, post-Federal Rules of Civil Procedure sense, but

rather to whether defendants could be held jointly liable under the applicable substantive law.  See

Hines & Gensler, supra at 789-90.

> Courts deciding the early fraudulent-joinder cases had good reason to delve deeply
> into whether the nondiverse defendant could be jointly liable under the applicable
> state law.  Common law joinder was far more restrictive (at least in actions at law)
> than the comparatively free-wheeling, transaction-based joinder we have now under
> the Federal Rules of Civil Procedure.  If a plaintiff wanted to sue two defendants
> together, he had to allege joint liability (or at least joint and several liability).
> "Misjoinder" generally meant that the plaintiff had joined defendants who were only
> separately liable. . . .  So, if a nondiverse defendant could only be separately liable,
> his joinder really was improper, and it could therefore be assumed to be a device to
> deprive the defendant of his right to exercise separable controversy removal.

Hines & Gensler, supra at 789 n.54 (footnotes and citations omitted).

> Second, the removal statutes were different.  Although removal under the first removal

statute was similar to modern removal, Congress altered the removal statutes after the Civil War:

> After the Civil War, Congress was concerned that plaintiffs were thwarting
> the expanded jurisdiction of the federal courts by joining unnecessary parties in order
> to render diversity incomplete.  To counteract that problem, the act allowed a diverse
> defendant to remove his part of the case to federal court -- despite the presence of
> joined, nondiverse co-defendants -- if the case against him was "separable" from the
> case against the other defendants.  But the Separable Controversy Act of 1866
> proved troublesome and costly in that it split cases between state and federal courts.
>
> To cure that predicament, Congress altered diversity-based removal yet again,
> this time providing that the presence of a "separable controversy" allowed the
> nondiverse defendant to remove the entire suit. But many problems remained. Courts
> continued to struggle to draw principled lines between separable and non-separable
> claims.  And some lower courts simply resisted the idea that the presence of a
> "separable" controversy could support removal of the entire suit.  These courts
> developed the so-called "separate" controversy doctrine, under which courts would
> split the case and remand the "separate" part back to state court.

Despite its many flaws, the "separable controversy" removal model remained in place until 1948, when Congress enacted the Judicial Code of 1948. Among its changes, Congress abolished "separable controversy" removal and replaced it with a provision allowing removal of the entire suit if it included a removable "separate and independent claim or cause of action." Congress still felt a need to protect non-resident defendants from the expanding joinder practices in state court. But it would do so under a new model, one that looked to whether the plaintiff had joined multiple claims rather than whether the plaintiff sought joint or several liability. If the suit contained a separate claim that itself was removable, then the whole suit could be removed, leaving it to the district court's discretion whether to remand the tagalong part of the suit[.]

Hines & Gensler, supra at 785-87. The Supreme Court's interpretation of these "separable controversy" statutes created perverse incentives for plaintiffs, and the Supreme Court adopted the fraudulent-joinder doctrine to police those incentives' results. As Professors Hines & Gensler explain:

While the fraudulent joinder doctrine is judge-made, it does have statutory roots. Shortly after Congress authorized removal of separable controversies, the Supreme Court ruled that claims asserted jointly against multiple tortfeasors or obligors were not separable for removal purposes. This was true even if the plaintiff could have sued the defendants severally. As a result, a plaintiff who included a nondiverse defendant and pursued his case as one for joint liability was assured of keeping his state court forum.

Soon after, defense lawyers started complaining that plaintiffs were pleading "sham" joint liability claims involving nondiverse defendants for the express purpose of precluding separable controversy removal. The defendants urged the courts to disregard the "sham" joint liability defendants, just as the courts would disregard a "formal" or "nominal" party. But the comparison was not quite apt; the "sham" defendants were not nominal parties because the plaintiffs were in fact asserting claims of personal liability against them. Thus, the litigants and courts coined a new term -- "fraudulent joinder" -- to describe the alleged, unfounded assertion of joint liability.

* * * *

While the Supreme Court has not applied the fraudulent joinder doctrine in the modern joinder era, there is no doubting the doctrine's continued vitality. Of course, with the end of separable controversy removal in 1948, the focus is no longer on joint liability but on the more basic issue of whether the plaintiff states a possible

claim against the alleged spoiler.  But with that adjustment, fraudulent joinder
survives (if not thrives) today.

Hines & Gensler, supra at 789-91 (footnotes omitted).

Third, the federal courts developed the fraudulent joinder doctrine decades before Erie R.R.
Co. v. Tompkins, 304 U.S. 64 (1938), realigned the federal courts' conception of their inherent
powers.  The embryonic fraudulent-joinder cases are unintelligible unless the reader understands
that, at the time, the federal courts exercised substantive common-law powers.  See Ala. Great S. Ry.
Co. v. Thompson, 200 U.S. 206, 219-20 (1906)(applying a pre-Erie R.R. Co. v. Tompkins
conception of the relationship between state common law and federal common law in a fraudulent
joinder case).  In sum, the federal courts have developed extra-statutory jurisdictional-fraud
doctrines that, though distinct, all serve the same purpose: protecting a defendant's removal rights.
Modern courts have searched in vain, however, for the source of their power to adopt those
doctrines, in large part because they have interpreted Supreme Court cases with multiple
anachronistic jurisprudential assumptions.

Further, although the jurisdictional-fraud doctrines share a purpose, they also have costs.
Indeed, so few cases meet the high standards of fraudulent joinder that the exercise rarely justifies
the effort or weeds out many cases from federal court; a federal court would be better off keeping the
case, deciding the state law issue on a motion to dismiss, and, if it declines jurisdiction, remanding
the case rather than playing the "no possibility of recovery" game.  The fraudulent-joinder doctrine
is, however, entrenched in the law of the federal courts, and, as with Judge Thapar, "altering the
fraudulent joinder doctrine is a decision that is above this Court's pay grade."  Murriel-Don Coal
Co., Inc. v. Aspen Ins. UK Ltd. 790 F. Supp. 2d at 597.  Until those at a higher pay grade reexamine
whether the federal courts have the power to create extra-statutory jurisdictional-fraud doctrines, the

Court is bound to apply those doctrines its superiors have adopted and to respect the logic that led its superiors to adopt them -- even if those conclusions follow from a questionable major premise. Further, as the Court has already explained, the removal statutes independently justify the Court's decision to apply the procedural misjoinder doctrine in this case.  Hence, procedural misjoinder is on a much firmer statutory basis -- and thus constitutional and jurisdictional basis -- than fraudulent joinder.

Turning from the Court's power to apply the procedural misjoinder doctrine to the Court's reasons for adopting it, the Court does not share the most common prudential concerns about the doctrine.  Regarding whether the joinder of meritorious but unrelated claims implicates the Court's subject-matter jurisdiction, the Court concludes that it does.  Whether the Court has jurisdiction to adjudicate a civil action depends, in part, on what parties are in the action.  See 28 U.S.C. § 1332(a). Therefore, whether a plaintiff has abused the rules to join entirely unrelated claims into a purportedly unified action, and thereby put into the action parties that do not belong there, strikes the Court as a matter of jurisdictional significance.

The Court also does not agree that the fraudulent-joinder doctrine impermissibly expands federal jurisdiction, even in light of the presumption against removal.  This theory's proponents point to rule 82 of the Federal Rules of Civil Procedure, which provides, in relevant part: "These rules do not extend or limit the jurisdiction of the district courts or the venue of actions in those courts."  Fed. R. Civ. P. 82.  The argument is circular.  "[T]he jurisdiction of the district courts" is not self-defining.  Rather, within constitutional limits, "the jurisdiction of the district courts" is whatever the federal jurisdictional statutes say it is -- no more, but no less.  Ex Parte McCardle, 7 Wall. at 512-13. To the extent that the federal jurisdiction statutes define jurisdiction by reference to

whether joinder is proper, the Court must look to some set of joinder rules to determine its jurisdictional boundaries.  The joinder rules themselves do not, of course, either extend or limit the Court's jurisdiction -- but the jurisdictional statutes do, and to the extent the jurisdictional statutes incorporate the rules by reference, the Court is duty-bound to consider the rules.

It is true that defendants could, instead, move to sever in state court, then remove the severed claim to federal court.  See 14B C. Wright & A. Miller, supra § 3273 at 877.  The trouble with this argument, as others have pointed out, is that it assumes a degree of state court efficiency that may not manifest in every case.  See Hines & Gensler, supra at 809-11.  A rule dependent on that possibility puts a defendant in a difficult position if the removal time limit looks likely to expire before the state court decides his motion to sever.  It is no answer to speculate -- as some have, see Parsons, supra at 67-68 -- that this problem will surface in only a few cases.  If it is a problem for even a few defendants, then it is also a problem for the federal courts to which those defendants present their claims.  That 28 U.S.C. § 1446(c)(1) contemplates removal after one year when the plaintiff has joined the defendant in bad faith also does not resolve the issue, because not every plaintiff who misconstrues joinder rules is acting in bad faith.

There remains the need for clear jurisdictional rules.  It is true enough that, all other things being equal, clear jurisdictional rules are better than opaque ones.  See, e.g., Grupo Dataflux v. Atlas Global Grp., L.P., 541 U.S. 567, 582 (2004)("Uncertainty regarding the question of jurisdiction is particularly undesirable[.]").  It is also true that some courts disagree about the fraudulent-joinder doctrine's particulars.  As the Court has already observed, however, many courts easily conclude that, even if they were to adopt the doctrine, it would not change the case before them.  If those cases -- and this one -- demonstrate anything, they demonstrate that, given the joinder standard's liberality,

the doctrine's application in a particular case is not nearly as difficult as its critics imagine.  Further, that some jurisdictional questions on the law's margins are difficult does not give the Court the right to duck them.

Having adopted the general doctrine, questions about its details remain.  The Court concludes that any heightened standard, whether phrased in terms of "egregiousness" or otherwise, is both unwarranted and unhelpful.  Its proponents frequently point to the heightened fraudulent-joinder standard and argue that the procedural-misjoinder standard also should be heightened.  For example, Professor Percy suggests that the courts should apply a "reasonable basis for the joinder" test that mirrors some jurisdictions' "reasonable basis for the claim" fraudulent-joinder test.  See Percy, supra at 614-15.  This semantic symmetry sacrifices thoughtful analysis.  Both doctrines aim to expose a plaintiff's effort to put a nondiverse defendant into a case where they do not belong, but the doctrines ferret out that "fraud" in different ways.  In the paradigmatic fraudulent-joinder case, the Court has jurisdiction over one claim only if a second claim joined to it is so meritless that "there is no possibility that the plaintiff would be able to establish a cause of action," Zufelt v. Isuzu Motors America, L.C.C., 727 F. Supp. 2d 1117, 1124-25 (D.N.M. 2009)(Browning, J.), under the applicable law related to the allegedly fraudulently joined defendant.  That law is frequently state law, with which the federal courts are comparatively less familiar than state courts, and which frequently is in flux, and thus might accommodate a plaintiff's good-faith novel claim.  In light of these factors, it makes sense to consider such claims with a certain solicitude, and declare fraudulently joined only those claims for which there is no possibility of recovery.  In the paradigmatic procedural-misjoinder case, by contrast, the law and the facts are both basically fixed, and the claims are both apparently meritorious; the only issue is whether the claims belong together in the same action, because they

arise out of the same transaction or occurrence and raise at least one common question, or not. There is no reason to conduct that straightforward inquiry with the heightened deference that the "egregiousness" standard would impose. See Hines & Gensler, supra at 819-20 (rejecting the "egregiousness" test for related reasons). Accord Greene v. Wyeth, 344 F. Supp. 2d at 685 (rejecting the "egregiousness" overlay, concluding instead that ordinary misjoinder alone constitutes procedural misjoinder). Most importantly, the two statutory provisions do not say anything about "egregiously misjoined" defendants; they talk about "properly joined" defendants. This language suggests that the Court should conduct a normal rule 20 analysis, not some artificially heightened rule 20 analysis.

The final area of major disagreement among the federal courts that have adopted the doctrine is vertical choice of law. There is considerable disagreement among courts and commentators about whether state or federal law governs the procedural-misjoinder inquiry. See Jeff Fisher, Note, Everybody Plays the Fool, Sometimes; There's No Exception to the Rule: Procedural Misjoinder is Not an Exception to the Voluntary-Involuntary Rule, 60 Baylor L. Rev. 993, 1008-11 (collecting cases). The parties agree that federal rule 20 and the applicable state rule are identical in all material respects and that the choice makes no difference to the outcome in this case.

Although this case does not squarely present the question, the Court notes its discomfort with the majority approach that applies state law. The Court begins with language the majority has apparently ignored: rule 81 of the Federal Rules of Civil Procedure provides that those "rules apply to a civil action after it is removed from a state court." Fed. R. Civ. P. 81(c)(1). That language is unequivocal, and the Court declines to adopt a version of the fraudulent-joinder doctrine that contravenes it. Further, applying state rules would create a perverse incentive: it would encourage a

plaintiff-friendly state to design its joinder rules to allow a plaintiff to bring in the same suit a claim

against a nondiverse defendant and an unrelated claim against a diverse defendant, thereby depriving

the diverse defendant of the removal privilege.   Such a regime would thwart the widely

acknowledged federal policy to allow out-of-state defendants access to a federal forum.   As

Professors Hines and Gensler put it:

> [W]e think the doctrine of procedural misjoinder should look to federal joinder
> standards as a matter of federal jurisdictional policy.  State joinder rules cannot do
> the job.  To realize this, one need only recall that even properly applied state joinder
> standards can thwart federal diversity policy if they allow unrelated or loosely related
> claims to be joined in one action.  If you believe -- as we do -- that there is a value to
> giving out-of-state defendants access to federal court when sued by a home-state
> plaintiff, and if you believe -- as we do -- that the presence of a wholly unrelated
> nondiverse party should not foreclose that access to federal court, then you cannot
> blindly defer to whatever joinder rules the states might decide to follow, however
> permissive.

Hines & Gensler, supra at 817-18 (2006).

The cases and commentary have too quickly rejected the notion that rule 20 applies of its

own force.  Even Professors Hines and Gensler, who endorse applying federal joinder standards,

have resisted this view:

> We begin by examining the possibility that Federal Rule 20 might govern of
> its own force.  One early district court opinion invoked the Erie doctrine on its way
> to holding that Federal Rule 20 would control a procedural question such as this in
> federal court.  In Coleman v. Conseco, Inc., [238 F. Supp. 2d 804 (S.D. Miss. 2002),
> abrogated by Sweeny v. Sherwin Williams Co., 304 F. Supp. 2d 868 (S.D. Miss.
> 2004),] the court concluded that, because "the joinder provisions of [Federal] Rule
> 20 are procedural in nature," Federal Rule 20 must be followed as a valid exercise of
> the Rules Enabling Act process.
>
> While we do not dispute the general authority of the Federal Rules in federal
> court, we do not think they directly address the question at hand.  The question is not
> whether federal joinder standards apply in federal court, but, rather, whether the case
> may be removed to federal court consistent with 28 U.S.C. § 1441(a).  Nothing in
> Hanna v. Plumer, the Rules Enabling Act, or any other component of the Erie
> doctrine interjects the Federal Rules into the interpretation or application of the

> federal jurisdictional statutes.  Not surprisingly, <u>Coleman</u> and its <u>Erie</u> rationale
> appear to have been abandoned.  The district courts that have discussed <u>Coleman</u>
> have universally rejected its reasoning and instead have assessed joinder under state
> law.  Indeed, the victory has been so complete that even the author of <u>Coleman</u>
> switched sides.

Hines & Gensler, <u>supra</u>, at 813 (footnotes omitted).  In the first place, this line of reasoning ends in an intellectual cul-de-sac: nothing in the Rules Enabling Act or the <u>Erie</u> doctrine interjects state joinder rules into the interpretation of federal jurisdictional statutes.  More fundamentally, this reasoning overlooks the fact that, what the Rules Enabling Act and <u>Hanna v. Plumer</u> concededly do not do, the jurisdictional statutes themselves apparently do.  The removal statute's resident-defendant limitation expressly relies on whether a party is "properly joined."  28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest <u>properly joined</u> and served as defendants is a citizen of the State in which such action is brought." (emphasis added)).  Given the choice between reading a federal jurisdictional statute to defer to the vagaries of state joinder rules or reading it to implicitly incorporate federal joinder rules as part of a coherent procedural scheme, the latter reading appears to be the better one.

Further, strong policy reasons support applying the federal rules.  As Professors Hines and Gensler explained:

> Unlike fraudulent joinder -- a merits-based analysis that must look to state
> substantive law -- procedural misjoinder turns on litigation structure, where federal
> standards do properly exist.  More critically, procedural misjoinder is ultimately a
> jurisdictional doctrine designed to identify those cases where removal jurisdiction is
> appropriate despite the presence of a nondiverse co-party.  It is the policy underlying
> diversity jurisdiction and removal that is the key to this analysis, not whether the
> state has deemed the party structure acceptable for its internal litigation packaging
> purposes.

Hines & Gensler, <u>supra</u> at 816-17.

The Court also agrees that procedural misjoinder is an exception to the normal rule requiring all defendants to consent to removal.  As the Fifth Circuit explained in a related context: "In cases involving alleged improper or fraudulent joinder of parties, however, application of this requirement to improperly or fraudulently joined parties would be nonsensical, as removal in those cases is based on the contention that no other proper defendant exists."  Jernigan v. Ashland Oil Inc., 989 F.2d at 815.  The Court concludes that this reasoning applies with equal force in the procedural misjoinder context.  Moreover, 28 U.S.C. § 1446 (b)(2)(A) states: "When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."  The statute does not require the consent of improperly joined defendants.

There remains the issue of remedy.  It appears that the courts agree that severance is appropriate, but divide over what should happen next.  As Professor Percy states: "Some federal courts have severed the misjoined claims, retained jurisdiction over the claims between diverse parties, and remanded the other claims back to state court.  Others have severed and dismissed without prejudice those claims over which they lacked jurisdiction."  Percy, supra at 616 (footnotes omitted).

The Court concludes that neither approach is appropriate.  A court that finds procedural misjoinder has essentially found that a plaintiff has presented the court with two unrelated claims -- one of which the court has jurisdiction to decide, one of which the court lacks jurisdiction to decide -- as a single civil action.  To "dismiss" the latter claim is to exercise the jurisdiction the court lacks.  Further, although Congress has provided a sever-and-remand mechanism where plaintiffs have joined a federal-question claim with a claim outside federal jurisdiction, see 28 U.S.C. § 1441(c), it has not provided that remedy in the diversity-jurisdiction context.

- 62-

The Court believes the answer lies in plain sight: rule 21 of the Federal Rules of Civil Procedure provides that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21.  As Professors Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane explain,

> Courts frequently employ Rule 21 to preserve diversity jurisdiction over a case by dropping a nondiverse party if the party's presence in the action is not required under Rule 19. . . . The courts also have used Rule 21 to drop a party who was joined in an action for the purpose of preventing removal to a federal court or a transfer of venue.

7 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 1685, at 491-92 (3d ed. 2001)(footnote omitted).  The Court is aware of no convincing reason why it should not use this mechanism in procedural-misjoinder cases as well.  Indeed, because the Court concludes that the removal statute's "properly joined" proviso incorporates the Federal Rules of Civil Procedure's joinder rules, it makes sense to adopt those same rules' remedy.

Hence, the limited procedural misjoinder doctrine that the Court adopts addresses Judge Thapar's concerns about fraudulent joinder.  First, the Constitution does not require complete diversity; only the diversity jurisdiction statute does, see Strawbridge v. Curtis, 7 U.S. at 267. Congress is free to give the Court jurisdiction to decide whether the claims against one diverse defendant are misjoined with the claims against a nondiverse defendant; hence, the courts have jurisdiction to decide jurisdiction, and decide whether the case meets the statutory requirement -- which is greater than the constitutional requirement -- that the defendants be "properly joined." Second, if the claims against the nondiverse defendant are misjoined, the Court "drops" -- ignores, never discusses again -- the party, rather than dismisses a claim.  While the effect may be the same, the distinction has the effect of taking a lesser or no judicial action in the case of rule 21, rather than the dismissal or under some other doctrine.  Thus, because the Court will use procedural misjoinder

only when the allegedly procedurally misjoined nondiverse defendant is also a citizen of the state in which the plaintiff brought the state court action, the doctrine is tied to the removal statute -- something fraudulent joinder is not.

In sum, the Court adopts the procedural misjoinder doctrine in cases where the nondiverse defendant is also a citizen of the state in which the plaintiff brought the state court action. The Court rejects the "egregiousness" standard, and instead concludes that the proper standard is simply whether the parties are improperly joined. Though this case does not squarely present the question, the Court believes that it is appropriate to apply the federal joinder standard. In the unusual case where parties are misjoined, the Court will drop the nondiverse party.

## II.   FLORES-DUENAS' CLAIMS AGAINST USAA CASUALTY AND AGAINST THE BRIONES DEFENDANTS ARE NOT PROCEDURALLY MISJOINED.

Although the Court adopts the procedural misjoinder doctrine, the Court does not believe Flores-Duenas has fraudulently misjoined her claims against the Defendants. The Court concludes that Flores-Duenas' claims arise out of the same transaction or and present a number of common questions. The Court will, therefore, remand the case.

Party joinder under rule 20(a) has only "minimal requirements." In re Thornburg Mortg., Inc. Securities Litig, 265 F.R.D. 571, 585 (D.N.M. 2010)(Browning, J.).

> Such joinder only requires (i) that the claims by or against the party to be joined arise from the same transaction, occurrence, or series of transactions or occurrences underlying the claims by or against the party with which it seeks to join; and (ii) the claims by or against the party to be joined share at leas[t] one question of law or fact with the claims by or against the party with which it seeks to join.

265 F.R.D. at 585.

It seems that, at a minimum, the "same transaction or occurrence" provision requires a but-for connection: if either claim could not have arisen but for the transaction, joinder is improper.

Courts have struggled mightily to identify anything more than but-for causation which courts can apply in a principled, consistent, and predictable manner.  As Professors Wright, Miller, and Kay explain, the joinder standard's "transaction or occurrence" prong is not amenable to a bright-line test:

> Instead of developing one generalized test for ascertaining whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, the courts seem to have adopted a case-by-case approach.  As stated by one district court judge:
>
>> there can be no hard and fast rule, and that the approach must be a general one of whether there are enough ultimate factual concurrences that it would be fair to the parties to require them to defend jointly [the several claims] against them . . . .

7 C. Wright, A. Miller, & M. Kane, supra § 1653, at 409 (footnotes omitted)(quoting E. Fireproofing Co. v. U.S. Gypsum Co., 160 F. Supp. 580, 581 (D. Mass. 1958)).

The key to interpreting the rule lies in understanding its twin goals: to limit the private and public costs of redundant litigation while being fair to those parties who must litigate their claims in a single claim.  See 7 C. Wright, A. Miller, & M. Kane, supra § 1653, at 410-12.[10]  The provision is drafted broadly to empower parties, within only liberal limits that fairness imposes, to control those costs through litigation structure.  As early as 1926, the Supreme Court admonished the courts that

---

[10] As the cases Professors Wright, Miller, and Kay cite make clear, courts interpret rule 20's requirement that a "right to relief" be asserted against defendants "jointly, severally, or in the alternative" broadly.  See 7 C. Wright, A. Miller & M. Kane, supra § 1657, 428-440 (collecting cases).  The Rules' drafters added this phrase primarily in reaction against pre-Rules joinder practice, which "was governed by the substantive rights of the parties, often as defined by the forms of action, rather than by notions of judicial economy and trial convenience." 7 C. Wright, A. Miller & M. Kane, supra § 1651, at 390-395.  By listing "jointly, severally, or in the alternative" separately, the Rules' drafters intended to indicate that this conception of joinder was no longer relevant.  Thus, while this addition is important, it is anachronistic, more of an interest from an historical standpoint, and does not limit joinder, but instead indicates that an old joinder doctrine does not limit jurisdiction in modern civil practice.

the "transaction or occurrence" standard was to be read broadly.  Moore v. New York Cotton Exch.,

270 U.S. 593, 610 (1926) (discussing Equity Rule 30, from which rule 13 was adapted).  More

recently, the Supreme Court reemphasized this point when, while discussing Moore v. New York

Cotton Exchange, it stated: "[T]his Court held that 'transaction' is a word of flexible meaning which

may comprehend a series of occurrences if they have a logical connection."  Baker v. Gold Seal

Liquors, Inc., 417 U.S. 467, 469 n.1 (1974).  As Professors Wright, Miller and Kay explain:

> The transaction and common-question requirements prescribed by Rule 20(a) are not
> rigid tests.  They are flexible concepts used by the courts to implement the purpose
> of Rule 20 and therefore are to be read as broadly as possible whenever doing so is
> likely to promote judicial economy.  This approach seems sound inasmuch as no
> difficulty is likely to result from the joinder of even marginally related parties at the
> pleading stage.  The court always has discretion under Rule 20(b) to sever those
> parties whose claims may be tried more conveniently in separate actions or whose
> continued presence might be prejudicial to other litigants.

7 C. Wright, A. Miller, & M. Kane, supra § 1653, at 415-16 (footnotes omitted).  Professors Wright,

Miller, and Kay notice that this case-by-case approach is similar to the logical-relationship test that

governs the words "transaction or occurrence" under rule 13(a), which, with certain exceptions,

requires that

> [a] pleading must state as a counterclaim any claim that -- at the time of its service --
> the pleader has against an opposing party if the claim:
>
> > (A) arises out of the transaction or occurrence that is the subject matter of the
> > opposing party's claim; and
> >
> > (B) does not require adding another party over whom the court cannot
> > acquire jurisdiction.

Fed. R. Civ. P. 13(a).  See 7 C. Wright, A. Miller, & M. Kane, supra § 1653, at 409-412.  See FDIC

v. Hulsey, 22 F.3d 1472, 1487 (10th Cir. 1994)(endorsing the logical-relationship test for rule 13).[11]

---

[11] The Court's decision in this case is at tension with a single sentence -- an example that the

The Defendants in this case are properly joined, because "there are enough ultimate factual concurrences that it would be fair to" the Briones Defendants and to USAA Casualty "to require them to defend jointly" against Flores-Duenas' claims.  E. Fireproofing Co. v. U.S. Gypsum Co., 160 F. Supp. at 581.  The Court substantially agrees with the Briones Defendants that Hanna v. Gravett's reasoning is persuasive:

> On February 18, 2001, plaintiff Kim Hanna ("Hanna") was injured when a vehicle driven by Michael C. Gravett ("Gravett") collided with the rear end of Hanna's car on Interstate 64 in Hampton, Virginia.  Hanna suffered permanent injuries[, and] claims damages in the amount of $150,000.  Gravett's insurance coverage was limited to $25,000 at the time of the accident, thereby making him an underinsured motorist.  Hanna, on the other hand, was covered by a policy issued by State Farm Mutual Automobile Insurance Company ("State Farm") which included underinsured motorist coverage ("UIM").  Gravett's liability carrier offered to settle with Hanna for the full amount of Gravett's policy limits; it also notified State Farm of this settlement offer.  State Farm refused to consent to acceptance of the settlement offer and paid to Hanna the limits of Gravett's policy but has refused to pay more.

262 F. Supp. 2d at 644.  The Honorable Rebecca Beach Smith, United States District Judge for the Eastern District of Virginia, concluded that the parties were properly joined:

> In the case at bar, plaintiff has asserted a right to relief as to both defendants arising out of the same "series of transactions or occurrences."  See Rule 20(a).  Further, there are facts common to both defendants.  The legal obligations of both defendants are based upon a factual showing of Gravett's negligence.  Finally, the extent of

---

Court provided in dicta -- in the Court's opinion in Walker v. THI of New Mexico at Hobbs Center, 803 F. Supp. 2d 1287, 1317 (D.N.M. 2011)(Browning, J.) -- a rule 13 case in which the Court stated: "For example, in a legal malpractice case, the parties use evidence in the underlying case for the legal malpractice case, but they likely remain distinct transactions or occurrences."  803 F. Supp. 2d at 1322.  While the Court does not believe this opinion calls into question the result in Walker v. THI of New Mexico at Hobbs Center having examined the issue in the "example" in the concrete set of facts of this case, the Court concludes that that sentence may not be accurate in all settings, and does not decide this case.  Although rule 13 does not, of course, compel a party to bring a legal malpractice claim in the underlying case in which the legal malpractice claim arises -- an illogical result -- it is not because the claims do not arise out of the same transaction or occurrence; it is because the pleader does not have that malpractice claim "against an opposing party" "at the time of [the pleading's] service," as the rule requires. Fed. R. Civ. P. 13.  The counterclaimant's attorney is not likely an opposing party in the case.

> Hanna's damages will have a bearing on the extent of each defendant's liability. . . .   There is simply no need to relitigate the issue of Gravett's negligence in a second suit against State Farm.

262 F. Supp. 2d at 647-48.  As in Hanna v. Gravett, here, each defendant's legal obligations depend on a factual showing of Hoch's negligence in the underlying car accident and any damages Flores-Duenas sustained as a result.  There are, therefore, "enough ultimate factual concurrences" between the claims that it is fair for the Court to require USAA Casualty and the Briones Defendants to litigate the issue in the same case.  Further, trying the car-accident facts only a single time serves rule 20's purpose to limit litigation costs.  This approach accords with the weight of similar authority.  See 7 C. Wright, A. Miller & M. Kane, supra § 1657, at 84-85 n.13 (Supp. 2013)(citing Hanna v. Gravett with approval and collecting cases joining "an insurer with other defendants in a variety of actions").

It is true that the legal-malpractice claim is one step further removed from the coverage claims than the negligence claim was removed from the coverage claims in Hanna v. Gravett.  To win her legal-malpractice claim against the Briones Defendants, however, Flores-Duenas must prove that she would have won the underlying negligence claim against Hoch.  The Court therefore concludes that the thrust of Hanna v. Gravett's analysis applies with equal force here: the legal-malpractice overlay should not obscure that the Briones Defendants' and USAA Casualty's legal obligations both turn, to some degree, on whether Hoch was negligent.  Although commentators and cases divide about this result's wisdom, see R. Mallen, J. Smith & A. Rhodes, 4 Legal Malpractice § 37:13 (collecting cases on both sides of the issue), the Court concludes that allowing joinder in this case better effectuates the breadth of federal joinder practice than disallowing joinder.

The common-questions prong is also satisfied.  The central reason for this conclusion is that

- 68-

the facts underlying Flores-Duenas' legal-malpractice claims overlap with the facts underlying her coverage claims.  To win her legal-malpractice claim under New Mexico law against the Briones Defendants, Flores-Duenas must, of course, prove that she would have prevailed in a negligence claim against Hoch.  See Ranch del Villacito Condos., Inc. v. Weisfeld, 1995-NMSC-076, ¶ 14, 121 N.M. 52, 908 P.2d 745 ("To recover on a claim of legal malpractice based on negligence, a plaintiff must prove three essential elements: (1) the employment of the defendant attorney; (2) the defendant attorney's neglect of a reasonable duty; and (3) the negligence resulted in and was the proximate cause of loss to the plaintiff."  (internal quotation marks omitted)).  To win her breach-of-contract claim against USAA Casualty, she must prove that she would have been "legally entitled to recover damages" from Hoch.  Further, numerous facets of the calculation and apportionment of damages depend on the facts of the underlying car accident.

Willingham v. State Farm Insurance Co. is not to the contrary.  First, Willingham v. State Farm Insurance Co. applied the Mississippi joinder rule, rather than the federal rule, and thus treated as binding a similar decision of the Mississippi Supreme Court interpreting that rule.  See 2009 WL 2767679, at *2-4 (citing Hegwood v. Williamson, 949 So. 2d 728 (Miss. 2007)).  Further, even assuming away the vertical choice of law issue, Willingham v. State Farm Insurance Co. still would not change the outcome.  The cases share a superficial similarity: both cases involve claims against an insurer and a separate defendant, joined together because the claims against them enjoyed a but-for relationship with an underlying tragic event.  The similarity ends there.  Here, Flores-Duenas' claims against the defendants depend on the facts of the car accident.  In Willingham v. State Farm Insurance Co., although the facts of the fire explained why the plaintiffs wanted to build a new home, that explanation of the case's background had no legal consequences for their breach-of-

contract claim against the contractors they hired.  See 2009 WL 2767679, at *4 ("While both claims arguably 'arose' from the fire loss of Plaintiffs' house, they involve two separate contracts and implicate distinctly different factual and legal issues. . . . [T]he claims stem from two separate contracts, and there is no distinct litigable event linking the parties.").  For that reason, the claim against the contractors in Willingham v. State Farm Insurance Co. did not "arise out of" and was not "with respect to" the fire.

Because these claims are properly joined, the Court lacks subject-matter jurisdiction over this case.  The Court will, therefore, remand it to state court.

## III.   THE COURT WILL NOT AWARD FLORES-DUENAS ATTORNEY'S FEES.

In her motion to remand, Flores-Duenas also requests an award of attorney's fees and costs under 28 U.S.C. § 1447(c), which provides that an order remanding a removed case to state court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  "Absent unusual circumstances, fees should generally not be awarded when the removing party has an objectively reasonable basis for removal."  Wiatt v. State Farm Ins. Companies, 560 F. Supp. 2d 1068, 1079 (D.N.M. 2007)(Browning, J.).

The Court will not award Flores-Duenas attorney's fees.  This case does not present those unusual circumstances in which the Court should award attorney's fees.  USAA Casualty removed this case on the basis of a novel doctrine, the contours of which are still developing.  These circumstances materially differ from those cases in which the Court has awarded fees, e.g., where the defendant "offered no specific factual support for its assertion that the amount in controversy exceeded $75,000.00."  Wiatt v. State Farm Ins. Companies, 560 F. Supp. 2d at 1079.  See Dupwe v. Stern, No. CIV-08-0988 JB/RHS, 2009 WL 1299618 (D.N.M. Feb. 27, 2009)(Browning,

J.)(awarding fees in "a garden-variety landlord-tenant dispute," because the complaint evinced "no federal questions, no indication of possible diversity citizenship, and no allegation of a federal claim or federal jurisdiction.").  While USAA Casualty's interpretation of procedural misjoinder law is incorrect, it had "an objectively reasonable basis for seeking removal."  Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).

      **IT IS ORDERED** that: (i) the Plaintiff's Motion to Remand and for Attorney's Fees Award, filed August 9, 2013 (Doc. 10) is granted in part and denied in part; and (ii) Defendants Tom Briones and Briones Business Law Consulting, P.C.'s Motion for Remand, filed August 15, 2013 (Doc. 12), is granted.

 

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

William Garth Gilchrist
Christopher D. Lee
Davis, Gilchrist & Lee, P.C.
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Nicholas H. Mattison
Feferman & Warren
Albuquerque, New Mexico

--and--

Briggs F. Cheney
Joshua A. Allison
Sheehan & Sheehan, P.A.
Albuquerque, New Mexico

      *Attorneys for Defendants Thomas R. Briones and Briones Business Law Consulting, P.C.*

Charles J. Vigil
Leslie McCarthy Apodaca
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

*Attorneys for Defendant USAA Casualty Insurance Company*